# WHEELING.

RIGGS v. ARMSTRONG et als.

Submitted January 30, 1884—Decided April 5, 1884.

1. The province and only legitimate use of a cross-bill is to aid in the defence of the original suit, and the matter of it cannot be more extensive than the defence to the original bill.   When it departs entirely from the object of the bill and introduces new matter nowise connected therewith, and does not establish a good defence, it should not be allowed, or if allowed, should be dismissed on the hearing.   (p. 767.)

2. It is the disposition of courts of equity to regard substance rather than mere form ; hence in this case a bill filed as a cross-bill which could not be sustained as such, but having all the elements of an original bill, was held to be sufficient as an original bill and treated as such.   (p. 768.)

3. It is not necessary to the validity of a trust-deed, that it should truly state the debt it is intended to secure; but it may stand as a security for the real equitable claims of the *cestui que trust*, if they appear to be *bona fide* and are satisfactorily proven to be the debts intended, in fact, to be secured.   (p. 771.)

4. A trust-deed which recites that A., the *cestui que trust*, has, in pursuance of certain specified contracts, previously entered into between the parties, and verbal understandings and arrangements, advanced to B. and C., the grantors, at divers times large amounts of money to assist them to purchase staves and deliver them according to the terms of said contracts, and the said B. and C. being desirous of securing A. for the money advanced and paid to them, amounting to about twelve thousand dollars, and to secure him for any future advancements of money that may be made by him on said staves, they, the said B. and C., in consideration of the premises, conveyed to D., trustee, "all the merchantable oil-barrel staves" owned by them, in trust to secure to A. said twelve thousand dollars already advanced and for any money that might be thereafter advanced ; the said B. and C. failing to deliver staves enough to .pay the money advanced before the date of said deed. HELD :

    I. The said deed operated as a valid security for the balance found due to A. on account of their failure to deliver enough staves to pay for said advancements, the said balance being much less than twelve thousand dollars, the sum mentioned in the deed ; and

    II. The terms "merchantable oil-barrel staves" used in said deed, according to the preponderance of the evidence and the general definition of said terms, embraced both first and second class oil-barrel staves.  (p. 772.)

SNYDER, JUDGE, furnishes the following statement of the case :

On August 12, 1881, John A. Armstrong and the Monitor Towboat and Lumber Company two of the defendants to the original bill in the above entitled cause then pending in the circuit court of Pleasants county, presented to the judge of said court in vacation thier cross-bill praying, among other matters, an injunction to restrain W. W. Hall, trustee, and the Pittsburgh Stave Company from selling the staves in the cross-bill mentioned, which injunction was granted.

The plaintiffs in the cross-bill state therein that the said original suit of Riggs, in which this cross-bill is filed, was commenced July 8, 1881, and that they, the cross-plaintiffs, Simpson Jones and Ralph Hanes partners as Jones & Hanes, R. H. Gillespy, W. W. Hall, trustee, the Pittsburgh Stave Company and other named persons were made defendants therein. They state at considerable length the averments of Riggs' bill the substance of which, so far as it is pertinent

to the questions presented to this Court, is that Jones & Hanes owned large quantities of real and personal property; that they were merchants and dealers in staves in Pleasants county; that they and Riggs were partners as A. P. Riggs & Co. in a store at St. Marys in said county; that Riggs had obtained a judgment against Jones & Hanes for one thousand one hundred and ninety-eight dollars which was unpaid; that the real and personal property of Jones & Hanes was encumbered by a number of trust-deeds two of which were alleged to be void for the want of proper recordation; that in one of the other of said trust-deeds W. W. Hall was trustee to secure the Pittsburgh Stave Company and in two others R. H. Gillespy is trustee to secure various debts among them, debts due to the cross-plaintiffs, John A. Armstrong and the Monitor Towboat and Lumber Company; that it is alleged that said Gillespy is irresponsible, and praying that he be required to give security as such trustee; that he be enjoined from interfering with the business of A. P. Riggs & Co.; that the trust-deed which conveys the interest of Jones & Hanes in the assets of A. P. Riggs & Co. be set aside as to such interest; that the other trust-deeds exhibited with said bill be declared void as to the plaintiff Riggs and the other creditors of Jones & Hanes, and that upon the failure of Gillespy to give security as trustee, a receiver be appointed to take possesion of and sell the property of Jones & Hanes, &c.

The cross-plaintiffs then aver that on July 12, 1881, they filed their joint answer to said bill and moved the court to dissolve the injunction granted upon said Riggs' bill which motion the court continued.

They further aver that Jones & Hanes being indebted to them and the said John A. Armstrong having endorsed notes for their accommodation which he has since paid and now holds, (which indebtedness it is averred is fully set forth in their answer to the original bill) the said Jones & Hanes, on April 8, 1881, executed to R. H. Gillespy, trustee, a trust-deed to secure to them said indebtedness, conveying certain property therein mentioned and among it the one undivided half of a stock of goods and safe belonging to Jones & Hanes then in the store-house occupied by A. P. Riggs & Co. at St. Marys,

and that for the same purpose Jones & Hanes executed to same trustee, on April 27, 1881, another trust-deed on the same and other property; that by said trust-deeds Jones & Hanes conveyed to said Gillespy, trustee, a large number of staves including all the staves hereinafter mentioned as advertised by W. W. Hall, trustee, for sale; that by two contracts entered into between Jones & Hanes and the Pittsburgh Stave Company dated respectively September 22, 1879, and March 17, 1880, it was agreed that Jones & Hanes should sell to said stave company a specified number of staves of the kind and quality therein described; that said stave company at various times during the currency of said contracts to assist Jones & Hanes to execute the same paid to them in advance for portions of said staves without any agreement that the money so paid would be repaid, and they aver that at no time have Jones & Hanes, since the making of said contracts, owed any money debt to said stave company or been under any other liability to it than to deliver staves according to the terms of said contracts.

They further aver that, on November 27, 1880, Jones & Hanes executed a trust-deed to W. W. Hall, trustee, not recorded until April 9, 1881, conveying to him all the merchantable oil-barrel staves owned by Jones & Hanes in the counties of Pleasants, Tyler and Ritchie, and all such as may come into their possession on or before April 30, 1881, and some other property, in trust, to secure the said Pittsburgh Stave Company in the sum of twelve thousand dollars for money already advanced, and which might be thereafter advanced. They then aver that said trust does not constitute a valid lien as against them or said Gillespy, trustee, on said staves, and set out the reasons and grounds on which they assert said trust is invalid as to them with great elaboration and prolixity, and aver that said Hall, trustee, has advertised the staves conveyed to Gillespy, trustee, as aforesaid, for the use of the cross-plaintiffs, under the said trust-deed of November 27, 1880, to him as trustee for the use of said stave company.

They make all the parties to the original bill of Riggs, except themselves, defendants to this cross-bill, and pray that the title of Gillespy, trustee, to the one half of the goods of

the firm of A. P. Riggs & Co. may be affirmed, that said goods may be divided, that a receiver be appointed to take possession and dispose of same; that the business of said firm be settled and Riggs enjoined from interfering with the said goods, &c.

They also pray that said W. W. Hall, trustee, may be enjoined from selling any of the staves advertised by him under said trust-deed of November 27, 1880, and that said deed may be declared invalid as to them and said Gillespy, trustee, so far as it affects said staves, and, if not so declared, that its operation may be confined to such staves as are merchantable, and that they may have general relief.

The defendant, the Pittsburgh Stave Company, filed its demurrer to said cross-bill and, among other grounds, assigned as causes for demurrer the following:

1st. This defendant is misjoined as a defendant with A. P. Riggs & Co., and Jones & Hanes and others in relation to the judgment, the partnership accounts and other matters in which it has no interest;

2d. The bill is multifarious in joining the partnership business and other matters of A. P. Riggs & Co., and Jones & Hanes with the controversy between the plaintiffs and this defendant as to its rights under the trust-deed of November 27, 1880; and

3d. There is no equity in the bill.

The said stave company also filed its answer to said cross-bill.

The cause having been transferred by an order of the circuit court of Pleasants county to the circuit court of Wood county, it was, on May 5, 1882, by consent of parties, docketed in the latter court.

On May 23, 1882, the cross-plaintiffs, by leave of the court, filed in the cause, what they style, "an amended and supplemental cross-bill" in which, after correcting some formal errors in their first bill, they aver, that it has been ascertained since the filing of their former bill that the firm of A. P. Riggs & Co. are insolvent apart from the alleged claim of A. P. Riggs and "such being the fact, it is immaterial whether that part of their bill which refers to the claim of R. H. Gillespy, trustee, as against the said A. P. Riggs, to a portion

of the assets of said firm and which refers to the right of said Gillespy and your orators to have accounts of the said firm settled, shall be decided in favor or against them."

They then amend their former bill by omitting therefrom the first paragraph of the prayer which relates exclusively to the matters of the firm of A. P. Riggs & Co. and the claim of the plaintiffs and Gillespy to one half the assets thereof, and also by omitting those allegations on which said first paragraph of the prayer is based. And they refer to and make part of the amended bill all the allegations and the prayer of their former bill, except the portions declared to be omitted as aforesaid, and they make the same parties defendants.

The Pittsburgh Stave Company, on May 31, 1882, filed its answer to this amended bill. It admits the existence of the contracts between it and Jones & Hanes, dated September 27, 1879, and March 17, 1880, and also the trust-deed to W. W. Hall, trustee, dated November 27, 1880, and states in reference thereto, that at various times after entering into said contracts it made advancements or loans of money to Jones & Hanes to enable them to fill said contracts, but denies that such advancements or loans were made without any understanding or agreement that the money so paid should be repaid to it; but that it was the express understanding and agreement that, if Jones & Hanes failed to perform said contracts by delivering the staves they were to repay said money with its interest and so in proportion if they failed in any part; that Jones & Hanes have, at all times, since the first loan was made, been indebted to it on account of said advancements or loans and are now so indebted in the sum of three thousand two hundred and eighty-eight dollars and nineteen cents with interest; that in pursuance of said agreement and to secure respondent for said money Jones & Hanes executed said trust-deed of November 27, 1880; that for the money advanced after said trust was given it has been paid and that no part of said balance now due is for money advanced after said trust was given; that all the staves in the possession of Jones & Hanes or owned by them on February 7, 1882, or at any time since the date of said trust-deed were and are included in the description in said trust and are liable

to be sold thereunder, except culls which are not claimed by respondent. It controverts the construction put upon said deed by the plaintiffs and denies that any of the staves advertised by W. W. Hall, trustee, were not included in said deed; they aver that all or nearly all the staves advertised by Hall, trustee, were manufactured prior to and were in existence at the date of said deed, and that the plaintiffs have no lien on or claim to any of the staves advertised by said Hall, trustee. The plaintiffs replied generally to this answer.

A number of depositions were taken and filed on behalf of the plaintiffs, Armstrong and the Monitor Towboat and Lumber Co., and the defendant, the Pittsburgh Stave Co., to prove the respective allegations and denials of the bill and answer, and the court having had the staves in controversy sold by its receiver and the proceeds brought into court, which proceeds after deducting the charges thereon amounted to one thousand three hundred and forty-two dollars and sixty-four cents, the cause came on to be finally heard on December 28, 1882, and on that day the court entered its decree finding the equities in favor of the defendant, the Pittsburgh Stave Co., and ordered and decreed that the said sum of one thousand three hundred and forty-two dollars and sixty-four cents be paid over to the said company in part payment of the indebtedness found to be due to it from Hanes & Jones, and also ordered and decreed that said company recover from the plaintiffs, the said John A. Armstrong and the Monitor Towboat Co., its costs in this suit expended. From this decree the said plaintiffs obtained an appeal and *supersedeas.*

*W. P. Hubbard* and *H. M. Russell* for appellants.

*Ewing, Melvin & Riley* for appellee.

SNYDER, JUDGE:

The appellee, the Pittsburgh Stave Company, insists that the appellants are not prejudiced by the decree because the matters set up in their bill are not the subject of a cross-bill and, if treated as an original bill, equity has no jurisdiction to grant them the relief prayed. If this position be correct it

disposes of this appeal without reference to the errors assigned by the appellants. It should, therefore, be first considered.

The original bill and the answers thereto are not printed in the transcript before us and the only means we have of ascertaining the issues in that suit is from the statement of them in the cross-bill. . Giving to these statements the greatest latitude, they certainly do not furnish any valid foundation for the cross-bill in this cause. A cross-bill should be confined to the matters stated in the original bill, and should not introduce new and distinct matter not embraced therein; and, if it does so, no decree can be founded upon those matters, for as to them it is an original bill— *W. Va. O. & O. L. Co.* v. *Vinal,* 14 W. Va. 637.

The province and only legitimate use of a cross-bill is to aid in the defence of the original suit, and the matter of it cannot be more extensive than the defence to the original bill. Where it departs entirely from the object of the bill and introduces new matter in nowise connected therewith and does not establish a good defence it should not be allowed, or if allowed, should be dismissed on the hearing— *Hansford* v. *Coal. Co.,* 22 W. Va. 70; Story's Eq. Pl. §§ 389, 398, 401.

Applying these fundamental principles to this cross-bill, it is plain that neither it nor the amended cross-bill can be sustained. It does not appear that the plaintiff in the original suit made any claim to the staves or made any allegations against the trust-deeds constituting the only subject of controversy in the cross-bill. The issues presented by the latter are entirely distinct and do not seem to have any connection with the issues in the former suit. Moreover, the first cross-bill was clearly multifarious and the amended cross-bill altogether omitted the original issues and apparently all the matters in controversy in the original cause. The whole subject-matter of the original suit having thus been eliminated, it conclusively follows that the cross-bill, which thereafter related to matters new and distinct, in nowise connected with the issues in the original suit, could in no proper sense be treated or considered as a cross-bill.

But if it can be sustained as an original bill that may be

done notwithstanding the misnomer given to it by the pleader. It is the disposition of courts to regard substance rather than mere form or name and to so mould and treat the the pleadings as to reach the merits and attain the real justice of the case. *Sturm* v. *Fleming*, 22 W. Va. 404.

If we were to reverse the decree in this cause and put the parties as near as may be *in statu quo* and then dismiss them from court without prejudice because the subject-matter involved is not proper for a cross-bill, and if, then, either of the parties were to bring an original suit, in what respect would the pleadings and issues in such suit differ from those now before us? No doubt that part of the cross-bill which names the parties and states the object and pleadings of the original suit would be omitted from the new bill, but in all essentials the pleadings and issues in such new suit would necessarily have to be, at least, in substance just as those now presented to us. The recitals of the proceedings had in the original suit may be treated as mere surplusage and the naming of persons as defendants against whom no allegations are made or relief prayed, does not make them parties; and, therefore, these formal irregularities may be disregarded without prejudice to either party. This so-called cross-bill, then, having all the essentials of an original bill, it would certainly be very technical to deny relief to the parties to it simply and only because, by the mistake or inadvertence of counsel, the bill has been improperly named and some redundant and immaterial matters alleged in it which do not in any respect affect its substance or the merits of the controversy. If this so-called cross-bill, therefore, can be sustained as an original bill I think it should be so treated.

There can be no serious question about the sufficiency of its allegation. The only objection made is that the subject is not one of equitable jurisdiction. The controversy involves both the construction and validity of a trust. Trusts are especially subjects of equitable supervision, and courts of equity are always open, at the instance of the *cestui que trust*, to compel trustees to perform their duties. They will also interfere by injunction to restrain the improper exercise of the powers of the trustee. In the same manner they will interfere to prevent the loss of the trust-property, or to pro-

tect it from injury by any one. This right to interfere and preserve the trust-property does not rest merely upon the ground of irreparable injury; but in cases of trusts for the benefit of creditors the ground for equitable interference is mainly that of irremediable injury, and also because the machinery of a court of equity is alone capable of affording the proper degree of relief in such cases—1 Bart. Ch. Pr. 445; *Eacho* v. *Cosby*, 26 Gratt. 112.

It does not seem to me that the plaintiff could have had in this case a complete and adequate remedy at law. Certain accounts were absolutely necessary, and they could not have been taken in an action at law. I think, therefore, that equity has jurisdiction. The cases of *Poague* v. *Bell*, 3 Rand. 586 and *Franks* v. *Cravens*, 6 W. Va. 185, relied on by the counsel for the appellee, are very different from this and have no real application here.

This brings us to a consideration of the errors assigned by the appellants. The appellants claim: *First*, that the trust-deed of November 27, 1880, purports to secure a debt which never had any existence, and *second*, if such debt did exist the trust to secure it embraced only a part of the staves of which the proceeds were decreed to the appellee, the Pittsburgh Stave Company. Other errors are assigned, but I do not consider that any of them, except such as are comprehended in these two, fairly arise upon the record before us.

The errors thus complained of involve the interpretation of the trust-deed executed by Jones & Hanes to W. W. Hall, trustee, on November 27, 1880, which deed, omitting the premises and signatures, is as follows:

"That whereas, by virtue of two certain articles of agreement heretofore made and entered into between the said Jones & Hanes and the Pittsburgh Stave Company of New Martinsville, West Virginia, said articles of agreement dated respectively September 22, A. D. 1879, and March 17, A. D. 1880, by which the said Jones & Hanes agree to deliver, respectively, on or before the 1st day of July, 1880, two millions of staves, with the privilege of three millions, and on or before the 3d day of April, 1881, two millions additional merchantable oil-barrel staves to the Pittsburgh Stave Company, as set forth in said articles of agreement, a

large portion of which staves have already been delivered to the Pittsburgh Stave Company, a portion are on the banks of Middle Island creek and the Ohio river ready to be delivered, a number at various places in Tyler, Pleasants and Ritchie counties, and a portion in process of getting out and delivery in the counties aforesaid; and whereas, the said Pittsburgh Stave Company has, in pursuance of said articles of agreement and verbal understandings and arrangements, advanced said Jones & Hanes at divers times large amounts of money, which said amounts so advanced as aforesaid at present approximate twelve thousand dollars, to assist them, the said Jones & Hanes, to purchase said staves and deliver them according to the terms of the aforesaid contracts; and whereas, the said Jones & Hanes being desirous of securing said Pittsburgh Stave Company for the money already advanced and paid to them as above mentioned, and to secure the said Pittsburgh Stave Company for any future advancements of money that may be made by the said Pittsburgh Stave Company on said staves, the said parties of the first part doth hereby grant, sell and convey unto the said party of the second part, in consideration of the premises above mentioned and the sum of one dollar, the receipt of which is hereby acknowledged, all the merchantable oil-barrel staves owned by the said Jones & Hanes in the counties of Pleasants, Ritchie and Tyler, in the State of West Virginia, and all such staves that may come into their possession on or before the 30th day of April, 1881; also one oak barge one hundred and twenty feet long, twenty feet wide, five feet deep, now on the bank of Middle Island creek, on the lands of Elsie Smith, in Tyler county, West Virginia; also one pine barge one hundred and twenty feet long, twenty feet wide, five feet deep, now in process of construction at the mouth of McKin on Middle Island creek, in Pleasants county, West Virginia,—in trust nevertheless to secure the said Pittsburg Stave Company in the sum of twelve thousand dollars as aforesaid, being money advanced already as above mentioned, and for any money that may be hereafter advanced."

The evidence satisfactorily proves that at the date of said deed Jones & Hanes were indebted to the Pittsburgh Stave

Company for advancements theretofore made by it in a sum exceeding three thousand two hundred and eighty-four dollars and twenty-four cents, the amount found to be due it by the decree, and that all the staves of which the proceeds were decreed to said company were then in the possession or under the control of Jones & Hanes. Jones in his deposition says: "All the staves included in the trust given to W. W. Hall, dated November 18, (27) 1880, we had in our possession or under contract, so that we knew who had them." This statement is not contradicted but corroborated by other evidence. The questions then whether goods not in existence can be granted, and whether advancements made after the date of the deed could be secured by it, do not arise and will not be considered.

1. The appellants insist that because no express contract was made between Jones & Hanes and the stave company that the money advanced should be repaid, the only liability of Jones & Hanes was to respond in damages for a breach of their contract, and the terms of the deed do not afford any security for such liability.

In *Shirras* v. *Craig*, 7 Cranch 34, it was held that "it is not necessary to the validity of a mortgage, that it should truly state the debt it is intended to secure; but it shall stand as a security for the real equitable claims of the mortgagee, whether they existed at the date of the mortgage or arose afterwards upon the faith of the mortgage before notice of the defendant's equity." * * * "If upon investigation," says Marshall, C. J., in the same case, "the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights, unless it be in favor of a person who has been, in fact, injured and deceived by the misrepresentation," p. 51.

The above language was quoted and the principles of that decision fully approved by this Court in the case of *McCarty* v. *Chalfant*, 14 W. Va. 531, 546–7. See also, *Lawrence* v. *Tucker*, 23 How. 14; *Lyle* v. *Ducomb*, 5 Binn. 590; *Wood* v. *Weimer*, 104 U. S. 786.

There is not a particle of evidence that the debt in this

cause is not *bona fide* and justly due, or that there was any misrepresentation or fraud by which the appellants were misled or deceived. The trust-deed was on record before their claim arose and they are presumed to have had notice of its contents. The grantor and the agent of the stave company both testify that the deed was given to secure the re-payment of the advancements made if there should be any failure to deliver the staves and that it was the intention to secure the very liability on which the debt decreed to the stave company is founded. But aside from this testimony it seems to me, under the authorities above referred to, the terms of the deed plainly embrace the debt found by the decree, and that the circuit court did not err in so holding.

2. The evidence shows that the staves sold consisted of three classes, to-wit: first and second-class "oil-barrel staves" and "culls." Of the last named the proceeds amounted to but twenty-eight dollars and sixty-nine cents, and it is conceded that they were not embraced in the trust. Of the first two named classes, it is contended by the appellants that only the first class was embraced by the terms, "all the merchantable oil-barrel staves," used in the deed, while on the other hand, the stave company contends the language used includes all oil-barrel staves that possess a value for the uses of trade in the manufacture of oil barrels.

The evidence does not fully prove that the term "merchantable" has acquired in the stave business any peculiar or technical meaning, but I think the preponderance shows that the term does embrace both first and second-class staves. The distinction between first and second-class staves seems from the evidence to be this: A first-class oil-barrel stave is one that is thirty-five inches long, not less than four and one half inches wide, three fourths of an inch clear in thickness, and made of good white oak timber; and a second-class stave must have the same dimensions except that it may be of less width and not so easily worked, and may be rougher; so that it would take more staves and more work to make a barrel from staves of the second-class than from the first, and consequently they bring a less price in the market; but that both classes are merchantable and sold in the markets, and a barrel made from the one class sells for the same price as a bar-

rel made from the other. The first-class has a fixed quotation price in the markets, while those of the second-class are sold at less price according to the qualtity and have no fixed market price.

If, however, we assume that the evidence does not prove that the term "merchantable" has a technical designation in the stave trade, then, we must resort to the general definition of it. Webster's definition of the word "merchantable" is, "Fit for the market, such as is usually sold in market, or such as will bring the ordinary price, as merchantable wheat or timber." It, therefore, seems to me, whether we take the evidence or the dictionary as our guide the term "merchantable" includes both first and second-class oil-barrel staves and that all such were embraced by the terms used in the said trust-deed.

As to the twenty-eight dollars and sixty-nine cents, the proceeds of the "culls," which were not conveyed by the deed, the decree may be erroneous, still it is not certainly so, because the proof shows that a large part of the proceeds were paid out in discharge of claims against the staves, and it is probable that part or all the proceeds here referred to were so paid out. But if such were not the fact, the maxim, "*de minimis non curat lex*," would, perhaps, be a sufficient answer to this alleged error.

For the reasons aforesaid the decree of the circuit court must be affirmed.

AFFIRMED.