# CHARLESTON.

SKAGGS v. MANN et al.

Submitted January 25, 1899—Decided April 1, 1899.

46   209|
46   255|
46   209|
49   523|
46   209|
55    13|
46   209|
61   451|

1. EQUITY PLEADING—*Trusts—Petition.*

L. J. B. purchased a tract of land with his wife's separate estate, and, without her knowledge or consent took the deed in his own name. They moved on the land, and occupied it as a common home  He afterwards, without her knowledge or consent, conveyed the land in trust to secure certain creditors and endorsers of his, who directed the trustee to sell under the trust.  About the time of the sale the benificiaries in the trust entered into a written contract among themselves, appointing M., one of their number, agent on behalf of all of them to purchase the property in case it did not sell for a sum exceeding two thousand two hundred and fifty dollars, binding themselves each to pay his proportional part of expenses of sale, payments to the trustee as they should fall due, and all other claims for which they were bound as endorsers for L. J B in said trust deed, and in proportion to the amounts of bonds upon which they were indorsers, and any one failing for the space of fifteen days to pay his proportion of his liabilities after it became due should forfeit his claim to the benefits of said contract, and were to share ratably any profits which might accrue from said purchase.  M. purchased the property at the price of one thousand two hundred dollars took a deed in his own name, paid the purchase money himself, some of the others paying their proportion of costs of sale, and paying considerable sums on some of their indorsments.  M. claimed the property as his own, refusing to recognize the others as co-purchasers under the contract.  J. S., one of the parties to the contract and a beneficiary in the trust deed, filed his bill in chancery against M. and the other parties to the contract and L. J. B. and the trustee in the deed of trust, praying that the trustee's deed to M. be construed to be a trust deed for the benefit of all the parties to the said contract in the proportions that each had paid, that M. be required to account for rents and profits and damages for waste, and that the land

be partitioned or sold, and proceeds divided. S., the wife of L. J. B. tendered her petition, making the plaintiff and all the defendants in the suit parties thereto, setting up her claim and title to the land in controversy, praying process against the parties thereto, and that they be required to answer the petition; that the trust deed made by L. J. B. and the trustee's deed to M. be set aside; that the deed to L. J. B. be construed to be a trust deed, and the property held thereunder by L. J. B. for her benefit; and that M. be required to account for rents and profits, etc., which petition was, not being excepted or objected to, permitted to be filed, process thereon accepted by all the parties, the petition taken for confessed by all the parties except M., who filed his demurrer and answer thereto to which answer general replication was made. Depositions were taken by all the parties interested, including their own depositions, and a full and fair hearing was had on the merits of the case as set up in said petition and answer. *Held*, under the circumstances of the case, not error to treat such petition as an original bill. (p. 219).

2. EQUITY—*Trusts*.

When a party has acquired the legal title to property to which another has a better right, a court of equity will convert him into a trustee of the true owner. (p. 223).

Appeal from Circuit Court, Summers County.

Bill by Judson Skaggs against James Mann and others. A decree was rendered from which defendant Mann appeals.

*Affirmed.*

MILLER & READ, for appellant.

J. W. ARBUCKLE and A. R. HEFLIN, for appellee.

McWHORTER, JUDGE:

Judson Skaggs filed his bill in equity in the circuit court of Summers County at the January rules, 1895, against James Mann, A. W. Burdett, R. M. Burdett, W. C. Eades, L. J. Burdett, J. J. Swope, and W. J. Lemon, trustee, defendants, alleging that the defendant, L. J. Burdett was the owner of valuable real estate, upon which he lived in said county; that said L. J. Burdett became and was financially embarrassed; that defendants A. W. Burdett, R. M. Burdett, and J. J. Swope and plaintiff were creditors and indorsers of said L. J. Burdett, who, to save his creditors and indorsers, and secure them from loss by reason of their indorsements, executed a deed of trust to defen-

dant W. J. Lemon, trustee, on said real estate, which was
duly recorded in said county, and exhibited a copy thereof
with his bill; that one of defendant L. J. Burdett's said
debts was due and payable to one John Graham, and for
which he had a decree to sell the said real estate; that
plaintiff, and the defendants L. J. Burdett, J. J. Swope,
R. M. Burdett, A. W. Burdett, and W. C. Eades, bought
the said decree, and on the 8th day of November, 1886,
executed to said Graham their several separate notes or
bonds, payable in one, two, and three years, for said debt
or decree, so as to get time to adjust the said debts and
save themselves harmless as far as possible, which is
shown by a contract in writing among said parties; that
plaintiff along with defendants James Mann, J. J. Swope,
R. M. Burdett, and A. W. Burdett ordered the trustee
to sell the land, and he did accordingly advertise the
same for sale to be had on the 31st day of March, 1887;
that on said last-mentioned day the same parties who
ordered the sale entered into a contract in writing to
share equally and ratably, and to pay equally and
ratably, the said debts of said L. J. Burdett on which they
were indorsers, and to buy the land if it should not sell for
a sum sufficient to relieve them of all their respective lia-
bilities, and in said contract appointed James Mann as
their agent to purchase the said land for them unless it
sold for the sum of two thousand two hundred and fifty dol-
lars, which was near the amount for which they were
liable, and that each of said obligees in said writing was to
share equally and ratably in the payment of the said debts
upon which they were obligated, and to hold an interest in
said land in proportion to their payment on said debts, and
filed a copy of said contract; that said Mann purchased the
land at said sale at the sum of one thousand two hun-
dred dollars, which was really less than one-half its value,
and only about one-half the amount for which said parties
were liable; that soon after the sale Mann sent plaintiff a
statement of his part of the costs, which he promptly paid
to said Mann, which was the only demand said Mann ever
made on plaintiff; that soon after A. W. Burdett and R.
M. Burdett became entirely insolvent, and paid nothing on
any of the obligations; that soon after it became known

that said parties were insolvent, plaintiff, Mann, and Swope met and entered into a parol agreement that Mann would pay the demands as they became due to the trustee for the purchase of the land; that Swope would pay on the large note in the Bank of Union, upon which Swope, A. A. Miller, R. M. Burdett, and James Mann were indorsers, and that plaintiff would pay on another large note in the Bank of Union, upon which plaintiff, A. W. Burdett, and R. M. Burdett were indorsers, and also to pay each and other smaller debts for which they were liable, and which were secured in said trust deed; that in pursuance of said last agreement Mann paid the sums as they came due to the trustee, and were applied, as plaintiff was informed, to the payment of the notes given by plaintiff and others to John Graham; that Swope paid large sums on the debt of the Bank of Union, which he so agreed to pay, and the plaintiff paid out in full the debt on which he was to pay to the Bank of Union and other debts embraced in said trust deed to the extent of about eight hundred dollars; that this contract was made for the convenience of the parties, and that all the payments so made on the debts by him were to be credited to him as so much paid on the lands, or as his part of the purchase money; that L. J. Burdett and W. C. Eades paid nothing on the debt due to John Graham, that at divers times plaintiff, Mann, and Swope met and settled about the rents and profits of the lands and the payments they had respectively made on said debts, and agreed to have a final settlement of the said transaction when the trustee was ready to make the deed, and they would divide the land in kind among themselves, or sell and divide the proceeds in proportion to the amounts paid; that plaintiff took for a year or two, with the full knowledge and consent of Mann, a part of the proceeds of the rent of the farm in grain, etc., and left the remainder in the hands of their agent, Mann, to be applied as a credit on whatever Mann had paid above his proportion; that Mann was to keep a correct account of expenses and of rents and profits, and settle from time to time, which he did for a year or two, but now wholly refuses to do so; that there was no breach or failure on plaintiff's part of any of the contracts about the land; that Mann took to himself a

deed from the trustee for said land, a copy of which he exhibits; that Mann claims title and ownership of the land, has gotten large sums from said land since the purchase, much more than he has paid on Burdett's debts, has cut and destroyed large amounts of saw timber and ties and tan bark, and greatly damaged and despoiled the value of said land; that said Mann is not the owner of said land, but only has an equitable interest in same, along with plaintiff and others; that he bought it as agent or trustee of them, and that the deed as far as it conveys an absolute title, is a fraud on plaintiff; that it is only a.trust deed, and Mann holds said land in trust, and prays that said deed may be construed to be a trust deed for the benefit of the parties who paid as specified; that all necessary and proper accounts of payments by the several parties on the debts of L. J. Burdett be taken, said Mann be required to render a strict account of the rents and profits and for all damages done by the destruction of timber on same, and for partition in kind or sale and division of proceeds, and for general relief.

Defendant Mann filed his demurrer to said bill, and, without waiving his demurrer, answered the same; admits the deed of trust executed by L. J. Burdett to defendant Lemon, trustee, and the written agreement; says they were executed by him in good faith; that he purchased the land at trustee's sale at one thouasnd two hundred dollars; that he paid all the purchase money therefor, none of which was refunded to him by plaintiff or either of defendants; that the notes executed to said trustee were by respondent, J. J. Swope, plaintiff, R. M. Burdett, and A. W. Burdett, but were wholly paid by respondent, as well as costs of said sale; that out of the proceeds of said notes and sale of the land the John Graham debt represented by said agreement was paid, and the said agreement assigned to respondent, and the balance of the fund from the sale of the land was distributed as follows: One hundred dollars paid by trustee to Swope, one hundred dollars to plaintiff, and the residue thirty-seven dollars and forty-one cents, to other and minor creditors, secured by said trust; denies that plaintiff or either of defendants paid off the debts or either of them, that respondent was indorser on

or upon which they were indorsers, but utterly failed to do so; that all of said debts had been paid by respondent, except one of about eight hundred dollars, for which there is a decree against respondent; that said plaintiff and defendants, except respondent, violated the contract of January 1, 1884 (evidently meaning March 31, 1887), and failed to comply with in every particular, and have forfeited their claim to the benefits to be derived therefrom; denies any oral agreement as alleged, or that respondent, plaintiff and Swope ever met and settled about the rents of the land, or that he refused to make a final settlement with said trustee, but that respondent had long since made a correct and final settlement with him; avers that defendant Swope is not an indorser for L. J. Burdett, and paid nothing for him; denies any agreement to divide said land in kind or proceeds thereof; that the rents were accounted for until after the bonds for the purchase money became due, and he had to pay them, plaintiff and other parties having failed and refused to pay any part, or to comply with said agreement; denies that he received large sums from said lands since the purchase, as much or more than he had paid out on debts of Burdett; denies that he cut or destroyed large amounts of timber, ties, and tan bark, and has greatly damaged and despoiled the land. Respondent avers that he has improved the land, cleared about twenty acres, and spent much more than he received therefor from any source; denies that the land is worth more than what he paid for it, one thousand two hundred dollars, and has offered and requested plaintiff to take the land at what he paid for it, with its interest, which he refused; and denies each and every allegation of the bill not expressly admitted. Defendant Swope answered the bill, admitting the material allegations thereof, and claiming an interest in the property to the extent of his payments on the debts of L. J. Burdett, as per the agreement, and prays that Mann may be held to be trustee for the parties holding the property in trust for the several parties. Susan Burdett tendered her petition in said cause, alleging that she is the wife of. defendant L. J. Burdett; that her maiden name was Susan Scott; that at the time of her marriage she was possessed of valuable separate estate worth two thousand

dollars cash, and that she furnished to her husband one thousand eight hundred dollars with which to buy land for a home for her, and that with said money he bought the land in controversy; that the legal title was to be conveyed to her, but, as she is informed, by some mistake it was not done, but was conveyed to her husband; that she was to pay twenty-five hundred dollars, and she paid all but the sum that was due to John Graham, mentioned in the cause, and that she had arranged for the payment of that sum to him through the parties who executed the notes to him for his said claim; that each of the parties to this suit knew at the time they purchased this land that petitioner had paid this large sum of money on it, and that she was claiming, and always had claimed, the land, and was in possession of it; that she did not sign the trust deed under which the land was sold, and that she knew nothing of it until long afterwards and until the land was to be sold under the same, and that knowledge of her claim was brought home to all the parties at that time and before the sale, and that she claimed the said land and recognized no lien against it except the debt of John Graham; that she could have arranged and paid the Graham debt, and would have done so, if the parties to this suit had not sold it for the other debts in said trust deed; that each of the creditors and indorsers of her husband, and each of the beneficiaries in said trust deed, knew before they extended credit to or indorsed for her husband, L. J. Burdett, that petitioner had paid that large sum of money on said land, and was claiming it; that the parties to this suit assured her that they would protect her interests in this matter before any sale was made under said trust deed, and that they did let her live on and occupy said land until recently, when they evicted her therefrom, alleging that there was no claim against said land that was paramount to hers except the debt of Graham; that the parties had gotten more from the land since it was sold under the deed of trust than would pay the Graham debt, and that it should be so applied; that the sale made under the trust deed was not made at the instance of John Graham, and cannot an any wise affect her interests in this matter; that she has no adequate remedy at law, and praying to be made a party defendant

in this suit, that process issue on her petition against the plaintiff and each of the defendants to this suit, and that they be required to answer this petition; that the trust deed of L. J. Burdett to W. J. Lemon, trustee, be set aside as to petitioner, and held for naught as to her; that the deed from T. D. Burdett and wife to L. J. Burdett, conveying the title to this land, be construed as a trust deed, and that L. J. Burdett be held to hold the same as trustee for petitioner to the extent of the payments made by her, and that all proper accounts be taken and had as the amounts the parties have received from said lands since the so-called purchase by James Mann; that the deed from Trustee Lemon to James Mann be set aside and held for naught, and that her rights be fully protected, and for general relief. Process was awarded February 23, 1895 against the parties to the suit by name. The parties plaintiff and defendant to the suit accepted service in writing on the said petition. The defendant James Mann filed his demurrer and answer to said petition, denying that the money of petitioner paid for the land, and that, if she ever had any interest in the fund, it had been reduced to possession by her husband, L. J. Burdett, and denying that the legal title to said land was to be conveyed to her; that he had any knowledge that petitioner had paid any sum of money on said land, or that she ever claimed any interest therein, and that she was ever in possession thereof; that he had any knowledge that any of petitioner's money had gone into the payment for said land before he indorsed and went the security for her husband, L. J. Burdett, and that he in any way promised to protect her interests. He also denied each and every allegation of the petition not specifically denied. Petitioner joined in said demurrer, and replied generally to the said answer. The petition was taken for confessed as to plaintiff Skaggs, and all the defendants, except James Mann.

Depositions of all the parties plaintiff and defendant who were interested, and other witnesses, were taken and filed in the cause, and on the 1st day of September, 1897, the cause was heard, when the court overruled the demurrers of defendant James Mann both to the bill and to the petition of Susan Burdett, as well as the several excep-

tions to the depositions, and held and so decreed that the lands in controversy were purchased and paid for with the separate estate of Susan Burdett, and is her sole and separate estate, and not subject to the debts of her husband, L. J. Burdett, or in any manner bound for his debts, and that her hubsand, L. J. Brudett, under the deed made to him by T. D. Burdett, must take and hold the lands in trust for her, and that the trust deed made by L. J. Burdett to W. J. Lemon, trustee, of January 1, 1884, and the deed from Trustee Lemon to James Mann, dated November 3, 1888, are void as to Susan Burdett, and of no effect; and it was accordingly so decreed. But it was further decreed that, said Mann having paid the debt to John Graham, nine hundred and twenty-three dollars, as of October 29, 1888, which was a lien on theland purchased of the trustee, and decreed to be the property of Susan Burdett, the said James Mann is entitled to the sum he paid therefor, with interest, with the taxes paid on the said lands by said Mann, to be charged against the said Susan Burdett and against her land, and awarded her and her trustee a writ of possession, and holding that she was entitled to recover the rents, issues, and profits of said lands from the time James Mann took control thereof, and referred the cause to a commissioner to take, state, and report the annual rental value of said lands, and the rents, issues, and profits thereof, from the time said Mann took control of the same, which should be treated as a credit on the Graham debt, and taxes paid by said Mann, and any damages that may be shown by waste and destruction of timber, etc. From which decree the defendant James Mann appealed, claiming that the court erred in permitting the petition of Susan Burdett to be filed in this cause; in overruling and not sustaining appellant's demurrer to the petition; in overruling and not sustaining appellant's demurrer to plaintiff's bill; in overruling appellant's exceptions to certain decisions, and to the questions and answers noted in said depositions; in decreeing in favor of Susan Burdett for said lands, and holding the same to be her sole and separate estate, and not subject to the debts of L. J. Burdett, and that L. J. Burdett, under the deed from T. D. Burdett, of February 3, 1883, should hold the same in trust for the use and benefit of Susan; in

holding the trust deed from L. J. Burdett to W. J. Lemon, trustee, and the deed from Lemon to appellant, of November 3, 1888, to be void, and in setting them aside; in giving judgment to Susan Burdett for possession and for rents, issues and profits; in referring the cause to a commissioner; in charging appellant damages for waste, etc., without giving him credit or allowance for premanent improvements placed by him on said lands; in not ascertaining the amount, if any, of the separate estate of Susan Burdettt paid for the said real estate, if entitled to any interest in said lands it would only be to the extent of the application of her separate estate to the payment of the purchase for said lands; in not decreeing said land to be the real estate of appellant in fee simple. It does not appear that objection was made to the filing of the petition of Susan Burdett, and it is insisted that the demurrer thereto should have been sustained, because her cause of action and claim of title, if any she had, were a distinct and separate right of action, not raised by the plaintiff's bill or the answers of the defendants; that the controversy raised by bill and answers does not connect her with the plaintiff's claim or defendant's title, their contention being over the title of L. J. Burdett, now held by Mann, and not a controversy over the title of Susan; that if she had any action it would be by original bill; and that the parties to the original bill should at least have been made parties to the petition. The petition does name the plaintiff and defendants in said cause in the caption of the petition, and the prayer is that the petitioner "be made a party defendant in this suit, and that process may issue on this petition against the plaintiff and each of the defendants to this suit, and that they be required to answer this petition." Process was awarded thereon against the plaintiff and defendants by name, and they accepted service, and the defendant James Mann filed his answer thereto. Susan Burdett might well have been made a party to the suit, because she had an interest in the subject-matter of the suit; while it did not so appear on the record, it is admitted by the plaintiff, Skaggs, and the defendants interested, except James Mann, that they knew of her interest, and the evidence shows that Mann

had knowledge of it also. This was an attempt to partition, or to sell and divide, the proceeds of this land among the parties to the suit ignoring the rights of Susan Burdett. If she had been made a party defendant, she could have filed her answer, as she has her petition, in the nature of a cross bill, setting up affirmative relief; and, although her petition is not formally a cross bill, it makes the issue just as clear, and the rights of the parties just as well protected, as by cross bill or original bill. *Cunningham* v. *Hedrick*, 23 W. Va. 579.

On the 1st day of January, 1884, appellant wrote the trust deed which was executed by L. J. Burdett on the 28th day of August, 1885, and on that day entered of record, and the deed from T. D. Burdett and wife to L. J. Burdett was recorded on the same day. Susan Burdett knew nothing of the trust deed being executed by her husband until a short time before the sale under it, and did not know that the deed from T. E. Burdett and wife was not made to her until after this suit was brought. The petition of Susan Burdett is in the nature of an original bill. It makes all the necessary parties; and, taken in connection with the bill filed in the case and the exhibits therewith, which are referred to, is sufficiently clear in its allegations and its prayer to "duly apprise the parties of the essential inquiry to enable them to meet it by testimony." *Sturm* v. *Fleming*, 22 W. Va. 404. JUDGE SNYDER in his opinion in that case says: "I do not deem it necessay to enter upon any extended review of the authorities to prove that the form of chancery pleadings has in England, and perhaps to a greater degree in this country, ceased to be of any practical importance. Such pleadings in both countries have been greatly simplified. An informal claim or complaint is substituted in many cases for a bill; and the bill, when used, is only a concise narrative or statement of the material part of the complainant's case, with a prayer for the appropriate relief or for general relief, which will be sufficient in most cases. A rigid and technical construction of bills and other pleadings is exploded. *Mayo* v. *Murchie*, 3 Munf. 384. The name and the form are immaterial; substance is all that is required. In Virginia the practice of courts of equity, which is the rule

of practice in this State, allows the greatest liberty with respect to pleadings."

It will be observed that the plaintiff, Skaggs, raised no question about the petition, neither objecting nor excepting to the petition nor to the filing thereof, and the same was taken for confessed as to plaintiff, Judson Skaggs, and all the defendants except James Mann, and his answer was filed to said petition and general replication thereto by petitioner; and thus the issue was fairly and clearly raised thereon between Susan Burdett and said Mann, who was claiming the title in fee to the lands in question. It is true the proceeding is somewhat irregular and not exactly in line of technical pleading to permit a petition in the nature of an original bill thrust into a pending chancery cause by one who was not a party to the suit, yet it would seem that when an issue has been thus clearly made, involving the whole of the subject-matter of the original suit, in the cause has been fully and fairly heard as much so as it would be possible to be under an original bill and answer, and testimony taken therein, and a final decree adjudicating the rights of the parties who are all before the court, with all their depositions, that, under section 4, chapter 134, Code, which provides: "No decree shall be reversed for want of a replication to the answer, where the defendant has taken depositions as if there had been a replication; nor shall a decree be reversed at the instance of a party who has taken depositions, for an informality in the proceedings, when it appears that there was a full and fair hearing upon the merits, and that substantial justice has been done,"—the decree should not be disturbed by the appellate court for a mere irregularity or technicality. Should this decree be reversed., and the petitioner, Susan Burdett, remanded to her original bill and proceedings to have the relief which is given her by this decree, the pleadings could not vary materially from those in this case on the petition and answer, and it is not probable that the testimony would be materially different. "It is the disposition of courts of equity to regard substance rather than mere form; hence in this case a bill filed as a cross bill, which could not be sustained as such, but having all the elements of an original bill, was held to

be sufficient as an original bill, and treated as such."
*Riggs* v. *Armstrong*, 23 W. Va. 760.

It is claimed by appellant that the claim of Susan Burdett is stale; that she is barred and estopped by laches and limitations that the land was purchased by L. J. Burdett in 1876 or 1877, under a written contract between himself and T. D. Burdett, and title taken in his name, and he was held out to the world as the owner; that on the credit of his title he received large credit, and his neighbors indorsed his paper. It appears from the evidence that the land was contracted for by Mrs. Burdett herself, and that the deed was to be made to her as stated by herself and T. D. Burdett, who made the deed to L. J. Burdett, her husband; but that the writings were drawn afterwards at T. D. Burdett's house, as stated by Marinda Burdett, wife of T. D. Burdett, who says she remembers distinctly that at the time L. J. Burdett said he wanted the land for his wife in place of the lands he owned where she was living,—he wanted the deed made to her. Witness was not present when the deed was made. Plaintiff, Skaggs, as a witness, says he knew at the time he indorsed for L. J. Burdett that the money paid on the purchase of the land was the proceeds of the sale of lands willed to Mrs. Burdett by her father. James Mann says he knew Mrs. Burdett had invested money in the Gap Mills property, but did not know what had become of it. He says L. J. Burdett told him the property was deeded to him, and his wife would not go into the deed of trust with him, and that Burdett always told him that the right was in himself. L. J. Burdett says that Mr. Mann was down at his house after they had purchased the property at Gap Mills, and they went together over the place; that he told Mr. Mann that the Scott money paid for the place, with the exception of about five hundred dollars, and Mann said he thought it was a good bargain; and that Burdett was not in debt at the time his wife gave him the money to buy the land in question. Burdett further says that, at the time Mann first went on his bond in the Bank of Union, he owed a debt, and one of the indorsers had become insolvent, and they wanted him to make the note stronger; that he asked Mann to indorse it for him. Mann said to him,

"Jack, is the deed to the land in your own name or your wife's?" He told him that it was in his own name, and also told him at the time that the land by just rights should be in his wife's name, but was not. L. J. Burdett was asked: "Did Mr. Mann know your wife had any interest or claim in the land? A. I could not swear that he knowed. He ought to have knowed it. He asked me if it was deeded to her or me, and I told him it was deeded to me. He says, 'Jack, you are in a fair way of losing your land.' 'Yes; and,' I said, 'that is not all. It's my wife's land, and she is likely to be sold out of house and her home.' And he said, 'You have brought it on by your own sins.' Q. When was that? A. Well, I could not say; but it was some time after I gave the deed of trust, the day the deed of trust was written I told him the deed was in my name.. He said I had better get her to sign it, and I said, 'No; better not mention it to her.' 'Better make the best of it,' we said." Appellant knew Mrs. Burdett owned the Gap Mills property. He knew they sold that, and purchased the land in question. He knew of the investment of her funds. He wrote the trust deed on the land, dated January 1, 1884, which was not executed or recorded until August 28, 1885, when it was put on record on the same day the deed to L. J. Burdett was recorded, which last deed was dated and executed February 3, 1883, but was not received by L. J. Burdett until about the time of its recordation, who put it on the next day or two after he got it out of the office at Alderson. There is no evidence that L. J. Burdett ever put a dollar of his own into the land. "When a husband purchases property with his wife's money, and takes the deed in his own name, a resulting trust is raised in her favor, unless it is shown that she intended the money as a gift or loan to her husband, the establishment of which fact devolves upon the husband or those claiming under his." *Berry* v. *Wiedman*, 40 W. Va. 36, (20 S. E. 817), in which case upward of twenty-five years had elapsed from the making of the deed to her husband, but during all that time they had occupied it as their common home, —he always admitting in her presence the ownership,— and she held or recovered the property as against her husband's collateral liens. Mrs. Burdett up to the time of the

sale under the trust deed supposed she was secure in the property in her own name, and did not know it was not in her name until after this suit was brought. The fact that it was in the name of her husband seems to have been kept from her, and when executing the trust deed Mann suggested to Burdett to have his wife sign it, when Burdett told him they would better not mention it to her. " 'Better make the best of it,' we said." The evidence would indicate clearly that appellant must have had full knowledge of the claim of Mrs. Burdett. In this case there is no question about the purchase of the property with the wife's separate estate; neither is there any evidence to show that he took the title in his own name either with her knowledge or consent. On the other hand, it all tends to prove that the title was to be made in her name. "When one party has acquired the legal title to property to which another has a better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." *Cattle Co* v. *Becker*, 147 U. S. 47, 57, (13 Sup. Ct. 217); *Garner* v. *Bank*; 151 U. S. 420, (14 Sup. Ct. 390); *Felix* v. *Patrick*, 145 U. S. 317, (12 Sup. Ct. 862). The exceptions to the depositions of Skaggs and L. J. Burdett, the overruling of which is claimed to be error, were excepted to on the ground alone that the depositions of these witnesses had been taken in the cause and had not been excluded, nor had permission of the court been granted to retake them or either of them. This is purely technical, and the witnesses were recalled in rebuttal of testimony taken after they were first examined. The exceptions were properly overruled. The next assginment is that the court erred in overruling the exceptions to the depositions of J. L. Burdett and Susan Burdett, taken May 1, 1897. The exception indorsed is as follows: "The within deposition of L. J. Burdett is excepted to for the reason of incompetency of witness in so far as the evidence relates to the claim set up by the petition of Susan Burdett, the wife of L. J. Burdett. *Smith* v. *Turley*, 32 W. Va. 14, (9 S. E. 46)." In the first place, there is no exception to the deposition of Susan Burdett, and, if there were, the exception does not come within the purview of that decision and section 23 of chap-

ter 130 of the Code, as all the parties were still living at the time of the taking of the depositions. In the *Turley Case*, referred to, JUDGE BRANNON, in giving the reason of the incompetence of Mrs. Turley to testify, says: "True, that statute (section 23, chapter 130. Code) does not expressly exclude such party from giving evidence against creditors of the deceased; but creditors claiming under heirs, as to lands, in a sense, stand in their shoes. If Mrs. Turley establishes the trust, she overthrows the title of the heirs, and also the relief of the creditors as a consequence. Giving evidence against the heirs, she gives evidence against the creditors, as to the heirs she is incompetent under the letter of the statute, and as to the creditors incompetent under its spirit. Otherwise her children, willing to let her sustain her claim, might make no exception, and thus defeat creditors, if said creditors could not except for incompetency." Here the creditors are not claiming under the heirs of a decedent, but the vendors and all other parties in interest are living and may be heard on the witness stand in the cause. It is assigned as error in giving judgment to Susan Burdett for possession of the property and for rents, issues, and profits and referring the cause to a commissioner, and alleging damages for waste, etc., without giving Mann credit or allowance for permanent improvements made by him on the lands. If it is ascertained that appellant took the deed of trust from L. J. Burdett, and purchased the property at the sale thereunder with knowledge of the rights of Susan Burdett, he was a trespasser, and should account for the rents, issues, and profits from the time he took control of the property, and to ascertain the amount of such rents, issues, and profits, and the waste for which. he should be liable if a trespasser. It was proper to refer the cause to a commissioner to ascertain the same. It is assigned as error "in not ascertaining the amount, if any, of the separate estate of Susan Burdett paid for the said real estate. If she was entitled to any interest in the said lands, it would only be to the extent of the application of her separate estate to the payment of the purchase money for said lands." This position is not tenable, under the circumstances of this case. The purchase of these lands

was a whole contract made by or for the purchaser. Nearly the whole of the purchase money and all that was paid being paid from her separate estate, and the assumption by her of the sum still due as the purchase money on said lands under a former sale known in this proceeding as the Graham debt, which was the only lien upon said lands, and on the payment of which she would have clear title to the whole of said lands, the same being held by L. J. Burdett in trust for Susan, he had no right to execute the trust deed, and Mann and others mentioned therein as creditors and indorsers of L. J. Burdett took nothing thereunder, and the trust deed, as well as the deed from the trustee, Lemon, was null and void. Appellant having paid the lien held by Graham against the land, is entitled as decreed to be subrogated to the rights of Graham therein. The decree is affirmed.

*Affirmed.*