## CHARLESTON.

STATE v. DUQUESNE COAL COMPANY *et al.*

Submitted November 15, 1922. Decided November 28, 1922.

1.  EQUITY—*No Relief as Between Codefendants Upon Cross-Bill on Issues Not Germane to Original Bill.*

    It is a well settled rule of equity that no relief will be decreed as between codefendants upon a cross-bill upon issues not germane or having some substantial relationship to the subject matter of the original bill.  (p. 434).

2.  SAME—*Where Cross-Bill Has no Substantial Relationship to Original Bill or Decree Pronounced Thereon, Court Will Not Retain Jurisdiction and Proceed With Cross-Bill as Original Bill.*

    Nor should such a cross-bill or cross-pleading be retained and proceeded with as an original bill if the matters thereof have no substantial relationship to the original cause of action or to the decree pronounced upon the original bill.  (p. 435).

Appeal from Circuit Court, Harrison County.

Bill by the State of West Virginia against the Duquesne Coal Company, Rush Smith, trustee, and others, in which the first-named defendant filed a cross-bill against Rush Smith, trustee, and others, and Rush· Smith, trustee, and others, filed cross-bill against the first-named defendant. From the decree rendered defendants Rush Smith and others appeal.

*Reversed and cross-bill dismissed.*

*Robert R. Carman, Charles W. Louchery* and *Charles B. Johnson,* for appellants.

*Harry R. Downs* and *Millard F. Snider,* for appellees.

MILLER, JUDGE:

The State by her bill proceeded against the Duquesne Coal Company, a copartnership, and the individual members composing the same, and Edgar B. Rowe, Fairmont & Clarks-

burg Coal Company, a corporation, and Rush Smith, Trustee, to sell for the benefit of the school fund, a tract of 102 acres and one of 5.82 acres, subject to a prior grant or lease of all the oil and gas with mining privileges, as delinquent, forfeited and sold to the State in 1912 for the taxes thereon for the year 1910.

The defendants comprising the several members of the Duquesne Coal Company intervened by pleading styled a demurrer, petition, cross-bill and answer, deraigning its title to all of said property proceeded against and other lands and mining rights, conveyed to them by one Charles G. Moore, and wife, who is alleged to have purchased and taken title to all of said property as trustee for their said firm at a judicial sale thereof by Hoffheimer, special commissioner, the purchase money for which had all been provided and paid by them prior to the deed from Hoffheimer to Moore and prior to the date of the deed from Moore purporting to convey the property to respondents. Upon the showing made by this petition and answer, the court below, by decree of June 27, 1917, ascertained the amount of taxes for which the two tracts of land were sold and purchased by the state and the amount of all subsequent taxes accrued against the same, with the interest thereon, aggregating some $1,514.60, which being paid into court into the hands of the commissioner of school lands, the court decreed that the said two tracts be and the same were redeemed by said petitioners and respondents comprising said firm, so far as the titles thereto were in the State of West Virginia, and in so far as said redemptioners were entitled to redeem the same.

And the further order of the court was that as to all other matters in issue arising between the defendants upon the cross-bill and answer and not therein adjudicated, they should be and the same were adjourned and continued until a future term of the court and until which time the said cause was continued.

It is conceded that upon this decree of redemption all matters in issue between the State and the defendants to its bill were fully settled and adjudicated, and that nothing

further remained to be done in the cause upon that bill. The State was in no way interested in the issues sought to be presented between plaintiffs and petitioners in the cross-bill and their codefendants. By this so-called cross-bill the plaintiffs therein alleged that although they had provided, and had paid through Moore, their trustee, to Hoffheimer, special commissioner, all the purchase money, and that the latter had, on August 10, 1910, made a deed to Moore for all of said property, the said Moore had undertaken, on August 25, 1910, without respondents' knowledge or consent, to execute to them and another having no interest therein a deed for the property, in which he acknowledged receipt of only one-third of the purchase money when all of the purchase money had been paid by them to him and by him to Hoffheimer, special commissioner, reserving therein a lien on the property conveyed, for $26,733.32, which deed, without being recorded, was turned over by him together with an assignment by him of said lien to Carrie Smith, of the City of Elliott, in the State of Maryland, in breach of his express agreement with them, that said Moore would take title to said property and hold the same in trust for the cross-bill plaintiffs and convey the same to them or to a corporation to be formed by them, free and acquit from all liens, and especially from any lien for purchase money; and the prayer of said cross-bill answer, among other things, was that the vendor's lien purporting to be reserved in the said deed from Moore to them might be decreed to be invalid, null and void, and that a commissioner be appointed to release the same on the record.

On November 3, 1917, following said decree of redemption, the defendants Rush Smith and Minnie Smith, and Rush Smith and William D. Ireland as administrators c. t. a. of the estate of said Carrie Smith, deceased, appeared in open court and tendered and were permitted to file their several demurrers and answers to the bill of the State and to the cross-bill of appellees Peter Strom and others, partners trading as the Duquesne Coal Company, the answers of the other respondents adopting as their own the answer and cross-bill of the said Rush Smith.

In his answer to the appellees' cross-bill Rush Smith claiming as assignee of the vendor's lien and for the note for the amount thereof signed on behalf of the Duquesne Coal Company by Moore alone, admits the conveyance by Hoffheimer to Moore and Moore's conveyance to the appellees, but denies that the latter had provided and paid all the purchase money paid by Moore to Hoffheimer, but alleging on the contrary that $26,733.32 had been provided by and paid to said Moore by said Carrie Smith, and that in consideration thereof he had assigned to her said purchase money lien and the note for the like amount so executed by Moore; and therein said Smith also alleged and affirmed the validity of said lien and note and prayed that the said lien be enforced against the property so conveyed, including the tracts redeemed, and for general relief.

After the filing of this cross-bill answer of Smith, the appellees, on August 13, 1918, tendered and filed an amended and supplemental answer and cross-bill, in which, after making their cross-bill a part thereof, and in order that their original cross-bill might not be treated as an admission of the execution of the note for $26,733.32, not mentioned in the deed of said Moore to them, they denied the execution thereof by them or of any one authorized by them, denied any previous knowledge thereof, and denied that they at any time owed said Moore the amount represented by said note and vendor's lien; and they denied all previous knowledge of the assignment of said note and lien to said Carrie Smith. They alleged that said deed was never delivered to them by said Moore, and alleged that they had no knowledge thereof until years afterwards, and that just before the State's suit the said deed with the assignment thereof and of the vendor's lien by said Moore was placed on record by the administrators of said Carrie Smith or her assigns, and that said note constituted a forgery, and the reserved lien for purchase money a fraud upon them. The prayer of their pleading was that said note be canceled and delivered to the plaintiffs, and also that the alleged lien be also canceled and annulled.

By the decree appealed from, pronounced on July 26, 1921,

the court upon the pleadings and proofs adjudged that it had jurisdiction of the cause to determine the validity of the said lien and debt asserted by said Rush Smith, and if valid to enforce the same, and if found invalid to cancel the same, and to determine all the issues raised by the various demurrers, answers and cross-bills of the parties thereto.

It is apparent at once that the matters of the cross-bill have no substantial connection with or relation to the subject matter of the State's suit, filed pursuant to chapter 105 of the Code. The State's suit involved solely the rights of the State to sell the land purchased by it at a sale thereof for delinquent taxes, for the benefit of the school fund. In that suit it was necessary that the former owners and all persons having or appearing to have liens thereon should be made parties thereto, that the one having the right might avail himself in that suit of the right of redemption, or to the surplus of proceeds in the event of the sale thereof. The former owners and the lien creditors each had the right, and their rights were not conflicting, but stood on the same basis. Redemption by the former would inure to the benefit of the lien creditors, and vice versa.

But what possible relationship had these questions to those sought to be presented by the respective cross-bills, namely, whether in the first instance the note made by Moore on behalf of the Duquesne Coal Company was a forgery and void, and the reservation in the deed of a lien therefor as purchase money and the attempted assignment thereof to Carrie Smith constituted a fraud upon the rights of appellees and a cloud upon their title, which should be removed; and in the second instance whether the right of the holders of such alleged note could be enforced against the land and against the redemptioners. Of course there could be no substantial connection between these questions and the issue presented by the State's bill. Such being the fact, our decisions hold without exception that no relief can be afforded upon cross-bills between codefendants not presenting issues germane to the subject of the original bill. *West Virginia Oil & Oil Land Co.* v. *Vinal,* 14 W. Va. 637, 684; *Hansford* v. *Chesapeake Coal Co.,* 22 W.

Va. 70; *Peters* v. *Case,* 62 W. Va. 33; *Lewis* v. *Cregor,* 73 W. Va. 564; *Gist* v. *Virginian Railway Co.,* 79 W. Va. 167; *Root* v. *Close,* 83 W. Va. 600; *Callison* v. *Bright,* 85 W. Va. 700. In the latter case it is said that such a cross-bill can not introduce new and distinct matters, even though the same may be related in some way to that set up in the bill. ·

But should the court have retained jurisdiction and treated the appellees' original and amended and supplemental cross-bills as original bills, and adjudicated the rights of the parties depending on the facts pleaded therein and the issues presented by the answer and cross-bill of the appellants, as the court by the decree appealed from undertook to do? The decisions of this court mainly relied upon to support the decree are *Sturm* v. *Fleming,* 22 W. Va. 404, and *Riggs* v. *Armstrong,* 23 W. Va. 760, and the subsequent decisions which follow those cases, among which are: *Skaggs* v. *Mann,* 46 W. Va. 209; *Coombs* v. *Shisler,* 47 W. Va. 373; *Pethtel* v. *McCullough,* 49 W. Va. 520; *Law* v. *Law,* 55 W. Va. 4; and the later case of *Plumley* v. *Bank of Hinton,* 76 W. Va. 635.

It is unnecessary, we think, to enter upon any extended review of these and other cases bearing upon the subject. It is sufficient, we think, to say of all of them, that wherever the cross-bill, answer, petition or bill of review or other pleadings have been treated as original bills and the rights of the parties have been adjudicated thereon, the matters of such pleadings have had direct relation to the cause of action involved in or adjudicated upon the original bill and growing out of the same subject matter, and the codefendants had some conflicting rights therein opposed to the matter of the original bill. In *Riggs* v. *Armstrong,* for example, the cross-bill plaintiffs set up rights, not only against the claims of Riggs, the plaintiff in the original bill, but also against the trust creditors of Jones and Hanes. In that case it was held that the original cross-bill introduced into the record a new and independent cause of action not involved in the Riggs case, but that as Riggs and his cause of action were eliminated by the settlement of his claim, and as the amended bill omitted the controversy with Riggs, the multifariousness pertaining

to the original cross-bill calling for its dismissal was cured, leaving a controversy between them and their codefendants, the trust creditors, cognizable in a court of equity and as upon an original bill.

In *Law* v. *Law, supra,* the bill of review involved was to set aside a decree entered upon the original bill, as having been obtained by fraud. It related to the very subject matter of and decree upon the original bill. While for reasons stated it was held that the facts alleged did not present a proper case for a bill of review, nevertheless, as proposed, the bill should have been amended and treated as an original bill in the nature of a bill of review. In the case of *Skaggs* v. *Mann, supra,* the suit by the original plaintiff was to have a deed obtained by one of the defendants at a trustee's sale decreed to be in trust for plaintiff and others as per contract entered into between the parties. The wife of the trust debtor intervened by petition, and upon grounds alleged sought to have the purchaser at the trustee's sale decreed to be trustee for her, alleging that her husband fraudulently took title to the property, and without her knowledge or consent deeded it to a trustee to secure his debts, who made sale thereof in fraud of her rights. In that case it was held that her petition might be treated as an original bill. Manifestly, that was a case justifying the maintenance of her petition as an original pleading. In *Pethtel* v. *McCullough, supra,* the original suit was by one creditor to set aside a fraudulent conveyance, in which another creditor, not a party to the suit and having a distinct debt against the debtor, filed his petition. An order subsequently entered in the cause dismissed the original case agreed; and it was held that this dismissal did not take with it the petition of the intervening creditor, but that his petition might be maintained as an original bill to obtain the relief prayed for. In *Coombs* v. *Shisler, supra,* a suit by the administrator of the decedent's estate, there was a petition filed after a final decree, by the receiver of the court, in whose favor there had been a decree against the estate for a debt due from the decedent incurred while holding the office of general receiver. The petition sought to implead and require

the sureties on decedent's bond, in advance of a judgment on the bond, to pay impecunious creditors of said estate. It was held that the petition could not be maintained against the sureties because there was an adequate remedy at law, on the receiver's bond against them; and the remedy by petition in that case was denied for that reason. *Mankin* v. *Dickinson,* 76 W. Va. 128, is very similar in its facts to *Skaggs* v. *Mann.*

We find no case justifying the maintenance of a cross-bill or cross-pleading as an original bill, and a decree thereon, when the subject matter thereof has no substantial relation to the matter of the original bill or the decree thereon; and for that reason we are of opinion that the decree below in so far as it undertook to adjudicate matters on defendants' cross-bills should be reversed, and the cross-bills be dismissed.

*Reversed; Cross-bills dismissed.*