# WHEELING.

HANSFORD *et al. v.* CHESAPEAKE COAL COMPANY *et al.*

Submitted January 25, 1883—Decided July 7, 1883.

1. A cross-bill should be confined to the matters stated in the original bill, and should not introduce new and distinct matters not embraced therein; and if it does so, no decree can be founded upon those matters; for as to them it is an original bill. (p. 75.)

2. The province and only legitimate use of a cross-bill is to aid in the defence to the original suit, and the matter of it cannot be more extensive than the defence to the original bill. (p. 75.)

3. When the equities between the defendants do not arise out of the pleadings and proofs between the plaintiff and defendants, there can be no decree between co-defendants; nor can there be any decree between co-defendants where there is no decree in favor of the plaintiff. (p. 75.)

4. Where a vendor by his deed, for an entire sum, conveys a tract of land by metes and bounds, stating therein the quantity at a definite number of acres, this on its face is a sale not by the acre, but in gross and *prima facie* without any implied warranty of the quantity.   (p. 77.)

5. But, as the specification of an exact quantity without any qualifying words renders the deed ambiguous as to whether it was or was not intended by the parties that the vendor, by such positive affirmation, undertook to warrant that there was that quantity, the court, to aid in interpreting the deed, may consider parol evidence of the circumstances surrounding the parties and their situation at the time of the sale, and also their subsequent conduct in carrying it into execution.   (p. 78.)

6. If, in addition to the specification of the exact quantity, it appears on the face of the deed or contract of sale, that the consideration for the land is a multiple of the number of acres specified, this, while it is *prima facie* a sale in gross, renders the deed or contract ambiguous as to whether it was intended in fact as a sale in gross or by the acre, and in such case, also, parol evidence of the character just described may be received to aid the court in determining whether in fact it was intended as a sale in gross or by the acre.   (p. 78.)

7. Where such deed is on its face a sale in gross, if it is subsequently ascertained that there is either a deficiency or an excess in the quantity of land specified therein, and it is shown that the error in the quantity arose from a mutual and innocent mistake of the parties, a court of equity may, in some cases, upon proper pleadings and proof, annul the deed and rescind the sale, but in the absence of fraud, actual or constructive, in either party such court can allow no abatement for a deficiency or compensation for any excess.   (p. 78.)

SNYDER, JUDGE, furnishes the following statement of the case :

The appellants, Sarah K. Hansford and others, were co-defendants with John Claypool, Andrew Johnson, the Chesapeake Coal Company and others, in a suit brought in the circuit court of Kanawha county by E. F. Flagg against said defendants.   The bill and the greater part of the proceedings had in said suit do not appear in the transcript of the record brought to this Court, and we cannot, therefore, certainly know what were the issues and proceedings had therein, or the object and final determination thereof.   It is evident, however, from the parts of the transcript before us,

that the main and, perhaps, the sole purpose of said suit was to enforce the vendor's lien against certain lands sold by the plaintiff to the defendants, John Claypool and others, and that a controversy arose and was determined therein as to the true boundaries between said lands and a tract of about four hundred acres formerly owned by the appellants and which had been sold and conveyed by them to the defendants, Andrew Johnson and others, by deed with covenants of general warranty, and by the latter conveyed to the defendant, the Chesapeake Coal Company, by deed, dated January 21, 1873; that in the progress of the cause it was established by a survey made and filed therein that the actual quantity of land in said four hundred acre survey was in fact four hundred and sixty-eight acres; that the appellants having been made defendants in the cause on account of their interest in the said controversy as warrantors of the title to said four hundred acre survey and, apparently, upon no other ground, they, when it was established as aforesaid that said survey contained four hundred and sixty-eight acres, at April rules 1876, filed their joint answer and cross-bill in the cause, the allegations of which so far as they have any reference to the subject of this appeal are as follows:

"These respondents sold to Andrew Johnson and W. C. Wickham *et als.*, as set out in the deed filed with complainant's bill, four hundred acres of land at twenty dollars per acre cash. It was a sale by the acre, and not in gross. The patent called for four hundred acres. Both parties were mistaken in the quantity. It appearing from a survey made by Wickham and others, filed in this cause, that there are four hundred and sixty-eight acres, which at twenty dollars per acre, leaves one thousand three hundred and sixty dollars still due to these defendants from Andrew Johnson and the other purchasers set out in said deed, and these respondents ask for affirmative relief for the same against Andrew Johnson, W. C. Wickham, Isaac Davenport, jr., C. E. Wortham, T. B. Smith, C. M. Fry, H. C. Parsons, James Lees and the Chesapeake Coal Company their vendees, with interest from the day of sale. They ask that all the parties to this cause may be made defendants to this cross-bill except these defendants filing their answer, and that the

court will grant unto these defendants all such further and general relief as is meet and just; whereupon, &c."

The deed referred to in said cross-bill is dated, December 9, 1869, and after stating the consideration as eight thousand dollars in hand paid, it describes the land conveyed as "all that certain piece or parcel of land, lying and being in the county of Kanawha and State of West Virginia, on the waters of Paint creek and Morris creek, being the same land granted by the commonwealth of Virginia, by patent dated on the 2d day of July, 1855, to Felix G. Hansford, and which tract contains four hundred acres, and is bounded and described as follows:" (here the metes and bounds are given). And the patent mentioned in said deed contains the same general description and metes and bounds as the said deed and grants "a certain tract or parcel of land containing four hundred acres."

The defendants, the grantees in said deed, and the Chesapeake Coal Company demurred to said cross-bill and filed separate answers thereto in which they severally aver that the sale to them of said land was by the tract in gross for the price of eight thousand dollars which was paid in cash; that at the time the vendors represented that the boundary probably contained considerably more than four hundred acres, and they positively deny that it was a sale by the acre or that the deed was made under any mistake as to the quantity.

A number of depositions were taken the greater part of which consists of the verbal declarations of the parties and need not be given, as such part cannot be considered under the rules of law hereinafter stated. The part which is competent evidence, under said rules, in effect proves the following facts:

The grantors all resided in Kanawha county and none of the grantees resided in the State of West Virginia, except H. C. Parsons; that the grantors, who are the heirs at law of Felix G. Hansford, placed the land in the hands of said Parsons to sell for them, they agreeing to pay him therefor a commission of ten per cent. on the purchase-money; that the said Parsons went to Richmond, Virginia, made a sale there to the grantees, he agreeing to become one of the purchasers; that the deed was soon after prepared, executed and de-

livered by the grantors to Parsons in Charleston, W. Va., and the whole purchase-money was then and there paid to them by Parsons, none of the other grantees having ever seen the land or had any communication with the grantors until after the purchase-money had been paid and the deed delivered; that the vendors knew the original grant for the land had been founded on a survey located by protraction and not by actual survey, that is, it was founded on a constructive or paper survey, its metes and bounds having been copied from the calls of lines of earlier surveys forming its exterior boundaries, and that no actual survey had at any time since been made of the land; none was demanded or made at the time of the sale or afterwards until 1874, when one was made by the vendees for their own purposes in no way connected with the purchase; and that after this suit was instituted an accurate survey was made and the quantity in the tract ascertained to be four hundred and sixty-eight acres. This is all the competent parol evidence found in the record before us.

The cause was heard, on July 10, 1878, the demurrer overruled, "and the court being of opinion that the plaintiffs in the cross-bill are not entitled to the relief prayed for therein," dismissed the same with costs.

Subsequently, on December 12, 1879, the appellants tendered their bill of review in which they aver, in general terms, that there are errors of law apparent upon the face of the said decree of July 10, 1878, which should be corrected, and pray that said errors apparent may be corrected. It contains no allegation of new matter or of after-discovered evidence or facts and points out no error of law. To the filing of said bill of review the defendants objected and the court, by its decree of December 5, 1881, sustained said objection and rejected said bill. From this decree and that of July 10, 1878, this appeal was taken.

*T. B. Swann* for appellants.

No appearance for appellee.

SNYDER, JUDGE:

The appellants complain of and assign as error the action

of the court in dismissing their cross-bill and rejecting their bill of review. They insist that under the authority of *Benson* v. *Humphreys*, 75 Va. 196, they were entitled to compensation for the excess of sixty-eight acres of land at the price of twenty dollars per acre.

Before proceeding to consider these alleged errors, it is necessary to refer to a preliminary question presented by the record, and that is, was this a proper case for a cross-bill or for relief between co-defendants?

"A cross-bill should be confined to the matters stated in the original bill, and should not introduce new and distinct matter not embraced therein; and, if it does so, no decree can be founded upon those matters, for as to them it is an original bill." 2 Barb. Chy. Pr. 130; 14 W. Va. 678.

The province and only legitimate use of a cross-bill is to aid in the defence of the original suit, and the matter of it cannot be more extensive than the defence to the original bill. It may, perhaps, set up additional facts as constituting part of the same defence relative to the same subject-matter. But it must relate exclusively to the subject-matter of the original bill and things connected therewith. Foreign matter cannot be introduced unless it has arisen after the filing of the original bill. 2 Rob. Pr. (old ed.) 313. "But where it departs entirely from the object of the bill and introduces new matter in nowise connected therewith and does not establish a good defence, then such cross-bill deserves no other answer than a demurrer." *May* v. *Armstrong*, 3 J. J. Marsh. 261.

In *Ruffner, Donally & Co.* v. *Hewitt, Kircheval & Co.*, it is stated that, "It is the settled law of this Court, that a decree between co-defendants can only be based upon the pleadings and proofs between the complainant and defendants; and that where a case is made out between defendants, by evidence arising from the pleadings and proofs between the complainant and defendants, a court of equity should render a decree between the co-defendants." 14 W. Va. 741; *Vance* v. *Evans*, 11 *Id.* 342.

"Where the equities between the defendants do not arise out of the pleadings and proofs between the plaintiff and defendants, there can be no decree between co-defendants." *Blair* v. *Thompson*, 11 Gratt. 441; 14 W. Va. 741.

There cannot be a decree betwen co-defendants where there is no decree in favor of the plaintiff. *Ould* v. *Myers,* 23 Gratt. 383.

In the case before us, it appears from what has been already stated that, so far as the transcript of the record filed in this Court discloses, the principle and evidently the sole purpose of the original bill was to enforce a vendor's lien on land other than the aforesaid four hundred acre survey in favor of the plaintiff against certain defendants other than the appellants and, as incidental to the relief thus sought, a controversy arose in the suit as to the true boundaries between the land subject to said lien and the said four hundred acre survey which had been sold and conveyed by appellants, by deed with general warranty, to their co-defendants, Andrew Johnson and others; that the subject-matter of that bill, so far as it concerned or sought relief against appellants, the plaintiffs in the cross-bill, and Johnson and others their vendors and the only defendants to the cross-bill against whom any relief is asked, related exclusively to the question of the boundary of said four hundred acre survey, and on this question the interests of the plaintiffs and the real defendants in the cross-bill were identical and in that regard there was no controversy between them, nor was there any other so far as the transcript discloses. It does, however, appear that the controversy as to said boundary was by a decree in the cause decided in favor of the defendants and the plaintiff in the original bill was denied any relief against either the appellants the plaintiffs in the cross-bill or Johnson and others the real defendants in the cross-bill. And it was only after that controversy had been determined by a decree in the cause that the appellants were in a position to allege that there was an excess of sixty-eight acres in the four hundred acre survey; for, if the plaintiff in the original suit had succeeded in establishing the division line claimed by him the excess would have been much less and, perhaps, there would have been instead of an excess, a deficiency in said survey. From these facts it follows of necessity that, under the authorities before stated, this was not a case in which a cross-bill could have been properly filed, nor in which there could be a decree between co-defendants—certainly not between the ap-

pellants and their co-defendants, Johnson and others—and that the court should have sustained the demurrer to the appellant's cross-bill. The said bill introduced new and distinct matter not embraced in the original bill. In fact, its whole object was to obtain relief upon facts and issues not in the remotest degree referred to or involved in the original suit. It was an entire departure from the purpose and scope of the original bill and in no manner constituted, nor was it intended to be, a defence to any part of said suit.

Nor was this a proper suit for relief between co-defendants; because no equities arose between them out of the pleadings and proofs between the plaintiff and defendants; and for the further reason that as against the appellants and their co-defendants, Johnson and others, no relief whatever was granted the plaintiff, and consequently no equities could have arisen between them and no decree could be entered *inter sese* against or in favor of either. It seems to me, therefore, that the court did not err in dismissing the appellant's cross-bill.

But, as it is barely possible though not at all probable, that, owing to the unsatisfactory and fragmentary condition of the record as exhibited by the transcript before us, we may not have apprehended the case as it was presented by the whole record in the court below, it may be proper and more satisfactory not to rest our decision upon this ground. Conceding then that the cause was one proper for a cross-bill, or that the one filed as such may be treated as an original bill, were the appellants, upon the case made by them in their pleadings and proofs, entitled to relief?

The decisions of Virginia and of this State as well as many others, relative to the principles upon which relief will be granted or denied by a court of equity in cases of deficiency or excess of quantity in contracts for the sale of lands, are ably reviewed in the exhaustive opinion of this Court delivered by Judge Green in *Crislip* v. *Cain*, 19 W. Va. 438, and the principles deduced from said decisions carefully stated. These principles are now properly regarded as the settled law of this State on the subject, and such parts thereof as apply to the case at bar may be concisely stated as follows:

1. Where a vendor by his deed, for an entire sum, conveys a tract of land by metes and bounds, stating therein the

quantity at a definite number of acres, this on its face is a sale not by the acre, but in gross and *prima facie* without any implied warranty of the quantity. *Anderson* v. *Snyder*, 21 W. Va. 632.

2. But, as the specification of an exact quantity without any qualifying words, renders the deed ambiguous as to whether it was or was not intended by the parties that the vendor, by such positive affirmation, undertook to warrant that there was that quantity, the court, to aid in interpreting the deed, may consider parol evidence of the circumstances surrounding the parties and their situation at the time of the sale, and also their subsequent conduct in carrying it into execution. And if, in addition to the specification of the exact quantity, it appears on the face of the deed, or by the contract of sale, that the consideration for the land is a multiple of the number of acres specified, this, while it is *prima facie* a sale in gross, renders the deed or contract ambiguous as to whether it was in fact intended by the parties as a sale in gross or by the acre, and in such case, also, parol evidence of the character just described may be received to aid the court in determining whether in fact it was intended as a sale in gross or by the acre; but in neither case can the court consider any other kind of parol evidence, such as the verbal declarations of the parties before, at the time or after the execution of the deed.—*Depue* v. *Sargent* 21 W. Va. 326.

3. Where such deed is on its face a sale in gross, if it is subsequently ascertained that there is either a deficiency or any excess in the quantity of land specified therein, and it is shown that the error in the quantity arose from a mutual and innocent mistake of the parties, a court of equity may, in some cases, upon proper pleadings and proof, annul the deed and rescind the sale ; but in the absence of any fraud, actual or constructive, in either party such court can allow no abatement of the price on account of any deficiency in the quantity of land nor require the vendee to pay an increased price on account of any excess; because the mutual and innocent mistake of the parties does not warrant the court in making for them a new contract, as this would be doing, such as it might think they would have made had they not been ignorant of the true quantity when the deed was made, and then by its decree enforce each new contract.

These principles or rules are confined to cases in which neither party has been guilty of fraud of any kind. The rules of law relative to sales involving misrepresentation and fraud are also fully considered and stated in *Crislip* v. *Cain*, and they are essentially different from those just stated; but it is unnecessary to repeat them here as they have no application to the case under consideration, the appellants' cross-bill containing no charges or allegations of misrepresentation or fraud of any character.

The appellants' cross-bill avers, as we have seen, that the sale was by the acre and not in gross; and that "both parties were mistaken in the quantity." The consideration specified in the deed is eight thousand dollars, and the quantity of land four hundred acres. It was subsequently ascertained that the true quantity is four hundred and sixty-eight acres, thus showing an error of sixty-eight acres against the vendors. The appellants aver that this error was caused by a mistake of "both parties," and as there is no averment of any fraud in either party it follows that this error in the quantity arose necessarily from the mutual and innocent mistake of the parties. If, therefore, the sale can be considered a sale in gross, then, under the principles of law before announced, the appellants cannot compel the grantees, in a court of equity, to pay them an additional price for this excess in quantity. Was this a sale in gross? It is *prima facie* such sale; but inasmuch as it appears on the face of the deed that the consideration is an exact multiple of the number of acres specified therein, the deed is thereby rendered ambiguous as to whether it was in fact intended by the parties to be a sale in gross or by the acre; and whether it is the one or the other must be determined by the parol evidence of the circumstances surrounding the parties, their situation at the time of the sale and their subsequent conduct in carrying it into execution. This evidence, which has been hereinbefore fully stated, in my judgment, not only fails to rebut the presumption of a sale in gross arising from the face of the deed, but it clearly establishes the fact that it was intended and understood to be such by the parties at the time it was made. The conduct of the parties can be reconciled to no other conclusion. They knew at the time that the land had

been located by protraction, that it had never been actually surveyed, that constructive or protracted surveys are proverbially uncertain in quantity, and that almost all old surveys exceed the quantity they call for. The sale was for cash, the deed was delivered and the money paid without any demand for a survey by either party, or any provision or agreement made for a future survey. No survey was made or required by the grantors subsequent to the sale, and none made by the grantees until five years after, when one was made by the latter for their own use without any reference to the purchase. The vendors never claimed or demanded pay for any surplus land until April, 1876, when by their cross-bill in this cause they for the first time asserted a claim for pay for such surplus without even their making, so far as the record shows, any personal demand for such pay. Considering these facts and circumstances, the conclusion is inevitable to my mind that it was fully understood and intended by the parties that said sale should be treated as and that it was in fact, a sale in gross and not by the acre. The doctrine announced in *Benson* v. *Humphreys*, 75 Va., 196, the only authority relied on by the appellants, has been expressly condemned and entirely repudiated by this Court in *Crislip* v. *Cain*, 19 W. Va. 557, as being unsupported by precedent and unsound in reason.

I am, therefore, of opinion that there was no error in the said decree of July 10, 1878, dismissing the appellants' cross-bill. And there being no error in said decree there could, of course, be none in the said decree of December 5, 1881, refusing to permit the appellants to file their bill of review to correct errors apparent on the face of said decree of July 10, 1878. The latter decree having been found correct by this Court, there could be no errors therein to be corrected by a bill of review for errors apparent and, consequently, the said bill of review was properly rejected. Upon any view of the case, I am satisfied that there is no error in the decrees complained of by the appellants, and that said decrees should be affirmed with costs to the appellees and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.