# CHARLESTON

## PETERS v. CASE.

Submitted February 19, 1907.     Decided April 18, 1907.

1. EQUITY—*Cross-Bill—Contents.*
    A cross-bill, or answer praying affirmative relief, must be confined to matters stated in the original bill, and cannot introduce new and distinct matters not embraced therein.   (p. 36.)

2.  Same—*Bill of Review.*

    A decree, founded upon matter set up in a cross-bill, foreign to the subject matter of the bill, may be reversed on a bill of review for error of law.  (p. 36.)

3.  Same—*Cross-Bill.*

    A defendant who has obstructed a private road on his premises to the use of which the plaintiff was entitled, and for the vindication of his right to which the plaintiff seeks an injunction, cannot, as matter of affirmative relief, as upon a cross-bill, have a decree against the plaintiff compelling him to remove obstructions which he has placed in another portion of the same road on his premises, which the defendant claims the right to use. (p. 36.)

4. •  Appeal—*Presumption.*

    It is not error to reverse, on a bill of review, a decree predicated solely upon facts set up in an answer as ground for affirmative relief, because the evidence in the case would disclose the same facts.  The appellate court will entertain no presumption that the trial court looked to the evidence for facts which the pleadings disclose, and, on such presumption, reverse the decree.  (p. 38.)

Appeal from Circuit Court, Fayette County.

Appeal by J. T. Peters against E. N. Case.  Decree for plaintiff, and defendant appeals.

*Affirmed.*

Dillon & Nuckolls and Hubard & Lee, for appellant.

Walker & Summerfield, for appellee.

Poffenbarger, Judge:

E. N. Case complains of a decree of the circuit court of Fayette county, pronounced against him, on a bill of review filed by J. T. Peters, the purpose of which was to reverse and set aside a decree requiring the said Peters to remove a certain building, by the erection of which he had obstructed a road through his land, which Case claimed the right to use. This decree in favor of Case was predicated upon new matter, set forth in an answer which he had filed in response to a bill exhibited against him by Peters, to compel him, Case, to remove, from another portion of the same road, a building which he, Case, had erected in and upon it.

Peters was the owner of a tract of land which had come into the ownership and possession of his father, C. S. Peters, in the year 1884, under successive conveyances to different

persons, the first of which was dated December 8, 1851, by which Jesse Toney, the owner thereof, conveyed it to Harrison Jarrell as a part of a tract of 209 acres out of a tract of 6,000 acres. The land acquired, out of the Jarrell tract, by C. S. Peters contained 101 and ¾ acres. J. T. Peters, after the death of his father in 1896, purchased all the interest of his co-heirs and became the sole owner thereof. He and those under whom he holds have been in possession of the land for a great many years and he resides in a house which stands on the site of the one which his father had occupied, and has a store house and other buildings on the land. Between this tract of land, and a public road, known as the Mossy Creek road, there is a smaller tract of land which also constituted a part of the Jesse Toney 6,000 acre tract, which he conveyed to some person after the Peters tract had been conveyed out of it, and which had subsequently come into the ownership of Elizabeth Jane Pegram, who sold and conveyed it to R. H. Pegram. Over this tract of land the private road in question ran from the Peters land to the Mossy Creek public road. It also extended through the Peters land in the opposite direction, so as to give an outlet, through the Peters land, for another tract of land belonging to Case, lying back of that of Peters. Peters had altered a portion of the road through his land, putting it on worse ground, and erecting one or more buildings in the old road. Case having purchased the Pegram land, through which the road gave an outlet to Peters, by way of retaliation, erected a gate across that portion of the road which Peters had been using. Peters having torn away the gate, he erected a small building, one corner of which extended over a portion, or the whole, of the road. Peters filed his bill to compel Case to remove the building and restore to him the use of the road, alleging that said road had been used, by himself and his father and those under whom they had successively held, for more than twenty years, with the knowledge, consent and acquiescence of Elizabeth Pegram and R. H. Pegram. His bill made no reference to the obstruction which he had placed in that portion of the road which Case claims the right to use. Its allegations are confined entirely to the portion of the road leading from his land to the public road. Case answered the

bill, admitting most of its allegations, but denying that the building which he had erected deprived Peters of the use of the road, since he could pass around it on either side, the ground being level. As new matter, intended to afford a basis for affirmative relief against Peters, he set up in his answer the facts hereinbefore stated, concerning the portion of the road which runs through the farm of Peters, and prayed that he be required to remove his buildings from it and restore to him the use of it, as it was before the alterations complained of had been made. The case was submitted to the court upon the bill and its exhibits, the orders made, the answer and its exhibits and the depositions of witnesses and partially argued, when the plaintiff asked leave, and time, to prepare and file a special replication to the answer and to take proof, which leave the court refused to give. Thereupon the plaintiff demurred in writing to the answer and the court overruled the demurrer and pronounced a decree, requiring both the plaintiff and the defendant to remove the obstructions from the road. The plaintiff then moved the court to set aside so much of the decree as required him to remove the obstruction from that portion of the road which is located on his land. In the bill of review filed by Peters, to reverse and annul so much of the decree as granted relief to Case on his answer or cross bill, all these proceedings are set forth. And on the hearing thereof, that part of the decree was reversed and set aside, as was also such portion of the decree as had denied to Peters his costs against Case.

Admitting that a cross bill, or an answer praying affirmative relief, must be confined, in its allegations and prayer for relief, to the subject matter of the bill, counsel for the appellant, relying on the maxims, "He who comes into equity must do so with clean hands" and "He who seeks equity must do equity," say the new matter, set up in their answer and on which the decree against Peters was predicated, comes within that rule, since it shows inequitable conduct on the part of Peters, such in character as to deny th him the aid of a court of equity in respect to the subject matter of his bill, or a mutual equity due from him to the defendant which the court could properly enforce in granting relief on his bill.

The principles declared by the two maxims invoked do not

seem to sustain the position of the appellant. They do not bear on the question of the relation between the subject matter of the bill and the new matter set forth in the answer. They have no application until after such relationship has been established. Besides, they operate, when applicable, to defeat the plaintiff, not to afford relief to the defendant on his cross bill. They simply say that a court of equity will not entertain the plaintiff, unless he comes with clean hands, nor grant his prayer unless he will perform whatever duty he owes to the defendant, respecting the matter set up in the bill. They are defensive, not offensive. The decree in favor of the plaintiff is not now before this Court. There has been no appeal from it. So far as this record discloses, it stands unreversed and unchallenged. Hence, the time for insisting upon the application of said maxim seems to have passed.

Independently of the principles so invoked, the new matter set up in the answer seems to be entirely separate and distinct from the subject matter of the bill, though it relates to the same road and shows an obstruction by the plaintiff of the defendant's alleged right to use another portion thereof. While the two portions constitute one road, they are through separate tracts of land, belonging to different persons, and the titles to the respective rights of user in the different portions thereof, may rest upon entirely different grounds. The plaintiff's bill claimed a right of way through the defendant's land and his title is not denied. His bill says those under whom he holds bought the tract of land out of a large tract of 6,000 acres before the Pegram land, lying between it and the public road, was conveyed out of the same tract. He seems, therefore, to have rested his title upon the law, giving a way of necessity to him who has purchased a tract of land which is surrounded by other lands of the grantor; and, although the allegations of the bill may be somewhat general and indefinite, lacking in legal certainty, the decree based thereon is not here for review, and we cannot say the demurrer thereto should have been sustained, or that relief should have been refused for insufficiency of the bill. Some of the allegations might be construed as averring a title by prescription, but this does not militate against the other allegations averring a different title; for he could rely upon both. What the title of the defendant may be is a

separate and distinct question; and that portion of the road in respect to which he claims the right of use is a separate and distinct thing from that portion of the road which constitutes the subject matter of the plaintiff's bill. The only sense in which they are related to each other is that, taken together, they constitute one road, as plaintiff and defendant and others had been using them. This falls far short of identity in respect to the right of user in the parties. One may have a perfect right to a way over the land of the other, while such other may have no right at all to a way over his land. Nothing in the record indicates that the two ways grew out of the same contract and, if they did, it does not necessarily follow that they would be, on that account, so nearly related as to make one proper matter for a cross bill in a suit concerning the other. This, we do not decide, however. That the matter set up in the bill and the new matter set up in the answer have no legal or contractual relationship or identity is perfectly obvious.

The authorities relied upon as sustaining the contention that the court, in granting relief to the plaintiff, could, against his will, right the wrongs inflicted by him upon the defendant, as it did, by the decree in favor of the defendant, which it afterwards reversed and set aside, and thereby enforced the two maxims, do not seem to propound such doctrine.

In *Comstock* v. *Johnson*, 46 N. Y. 615, the plaintiff was making an unauthorized use of the water, which he had the right to take from the defendant's mill dam. His right of use was confined to the running of his mill, but he had set up in addition to the mill a buzz-saw and was using the water to propel it. The defendant had shut off the water from both the mill and the saw, and the plaintiff had brought the action to restrain them from doing so and compel them to restore the water for both purposes. His bill set up a claim of right to the water both for the mill and the saw. The judgment of the court below was in his favor, that court having regarded the unauthorized use of the water as cause for an independent action, and the court of appeals did not reverse the judgment and dismiss the action, but simply modified it so as to enjoin the plaintiff from using the buzz-saw. The case seems to have involved more than the unlawful use of

the water. It extended to the right of use of the property
on which the mill was located, so that the right of the plain-
tiff, with respect to the water, was inseparably connected
with and constituted a part of, the contract which governed
the rights of the parties, as to the water and the use of the
land on which the mill and saw were situated. Nor does
*Cary* v. *Faden*, 5 Ves. 23, sustain their position. In that
case, the plaintiff sought an injunction against the defendant
to restrain him from infringing the copyright of the plaintiff,
by the publication of a certain book. The court found that
the plaintiff himself had been guilty of plagiarism. His
book was the fruit of literary piracy, as was that of the de-
fendant. The court refused relief, not on the ground of
inequitable conduct on the part of the plaintiff toward the
defendant, but, because it appeared that the matter in plain-
tiff's book was not protected by his copyright. He had no
title to the matter which had been taken from his book, and
no court could award him any damages for violation of his
copyright. This principle is affirmed by many decisions.
The rule is that whenever an action at the suit of another
would lie against a person pirating books, prints, charts or
music, a court of equity will grant an injunction and restrain
a fraud on the author's property; but, when the character of
the publication is such, that no damages could be recovered
in respect thereof at law, equity will not interpose. *Walcot*
v. *Walker*, 7 Ves. 2; *Souther* v. *Sherwood*, 2 Meriv. 440;
*Percival* v. *Phipps*, 2 Ves. & Bea. 26; *Gee* v. *Pritchard*, 2
Swans. 415. This is the principle underlying the decision in
*Edward Thompson Co.* v. *American Book Co.*, 122 Fed.
Rep. 922, cited and relied upon in the brief. The opinion
says an author who has pirated a large part of his work from
others is not entitled to have his copyright protected. The
principle is stated in 7 Am. & Eng. Ency. Law 536, as fol-
lows: "When it is said that a mere new disposition of exist-
ing materials may be original, this must be taken with the
limitation that the materials are such as may be lawfully
used; there can be no protection for that which is itself a
piracy." Counsel seems to have misapprehended the prin-
ciple upon which these decisions proceed. The parties were
not barred merely by their inequitable conduct, but by their
want of title and the right which their bills claimed. It is

well settled that the inequitable conduct, on account of which a court of equity will close its doors to a plaintiff, must be evil practice or wrongful conduct in the particular matter or transaction in respect to which he seeks judicial protection or redress.    Mere general iniquitous conduct, unconnected with the matter in the suit, is not sufficient.    *Woodyard* v. *Woodyard*, 41 N. J. E. 224; *Dering* v. *Earl of Winchelsea*, 1 Cox. Chy. 318, 29 English Reprint 1184; *Shaver* v. *Heller & Merz Co.*, 48 C. C. A. 48, 108 Fed. Rep. 821; *Insurance Companies* v. *Clunie*, 88 Fed. Rep. 160; *Surety Co.* v. *Layden*, 50 Atl. Rep. 378; *Chicago* v. *Stockyards*, 164 Ill. 224; *Wright* v. *Wright*, 51 N. J. E. 475.    The other maxim relied upon is not broader in its application.    See *Mahoney* v. *Bostwick*, 96 Cal. 53, in which the court says:    "But this maxim of equity jurisprudence only applies when the relief sought by plaintiff and the right demanded by defendant belong to or grow out of the same transaction.    It has no application where the demand of the defendant is based upon a contract separate and distinct from that which forms the subject of the plaintiff's action.

These authorities seem to sustain the proposition, asserted at the beginning of this opinion, that the two maxims invoked operate negatively for the defendant, not affirmatively, defensively, not offensively.    None of them treat the wrongful conduct of the plaintiff as proper matter for a cross-bill, but only as defensive matter, sufficient to prevent the relief sought by the bill.

Another ground of error is that, in order to reverse and set aside the decree against Peters, the court must have looked into the evidence and review the case on the facts, not disclosed otherwise than by the evidence.    From what has been said, it must be apparent that sufficient facts appeared from the pleadings, the bill and answer, to show that the decree rested on matter wholly foreign to the subject matter of the bill.    Though additional facts might have been found from the evidence, if the court could, on a bill of review, have looked into it, or it might have been found from the evidence that some of the facts set forth in the answer were not sustained by the evidence, the issue was made by the pleadings.    The decree necessarily stood upon the new matter set forth in the answer, for there was nothing in the bill upon

which it could stand. The untenableness of this position is clearly manifest.

The foregoing principles having been brought more fully to the attention of the court, on the bill of review, it became apparent that the demurrer to so much of the answer as set up new matter and constituted, in effect, a cross-bill, ought to have been sustained and no decree rendered in favor of the defendant, and accordingly the decree was reversed and set aside. That demurrer was an appropriate form of objection to such an answer is affirmed by the leading case of *West Va. O. & O. L. Co.* v. *Vinal*, 14 W. Va. 637, point 6 of the syllabus, page 638, and by *Hansford* v. *Coal Co.*, 22 W. Va. 75.

For the reasons stated, the decree appealed from will be affirmed.

*Affirmed.*