# CHARLESTON.

JOHN J. ROOT, *Adm'r.* v. WILLIAM D. CLOSE *et al.*

Submitted March 4, 1919. Decided March 11, 1919.

1. EQUITY—*Cross-Bill—Scope.*

A cross-bill, or an answer praying affirmative relief, must be limited in its scope to the subject matter of the bill. It cannot introduce a new and distinct subject, even though such subject may be related in some way to that of the bill. (p. 604).

2. SAME.

The purpose of a bill being the establishment of a debt and assertion of a lien for the amount thereof against property alleged to have been fraudulently conveyed by the debtor, averments in the answer, of title in the defendant not only to the fund constituting the alleged debt, but also to a horse, notes and a right of rescission of a deed, as ground for affirmative relief, introduce matters foreign to the subject matter of the bill, and may properly be struck out, in so far as they are relied upon as constitutin ground for cross-relief. (p. 604).

3. PAYMENT—*Gifts—Defense—Evidence.*

In a suit for the recovery of money alleged to be a part of the estate of a deceased person from one with whom the decedent, a man well advanced in years, unwelcome among his relatives, but

able to do a reasonable amount of work and having means of sub-
sistence, had made his home for a comparatively short time, in
whose hands he had placed the money, and who claims it as a
gift or as compensation for the care, support and maintenance of
the decedent and medical attention furnished him, while in life,
and expenses of his burial, there is a right of recovery in the
plaintiff, in the absence of clear and satisfactory evidence of
such gift or payment. Mere loose and indefinite declarations of
intention and purpose on the part of the intestate, accompanied by
conduct and circumstances of equivocal import, do not sustain the
defense in such a controversy. (p. 605).

4. APPEAL AND ERROR—*Fraudulent Conveyances—Badge of Fraud—
Finding of Trial Court—Conclusiveness.*

A trial court's finding of fraud in a conveyance of real estate
from a son to his mother, made with knowledge, on the part of
the latter, of an assertion of a claim of indebtedness against the
former and his intention bitterly and stubbornly to resist it, and
attended by disposition of all of his personal property, partici-
pated in and aided by her, leaving him without property out of
which compulsory satisfaction of the debt can be obtained, in
the event of the establishment thereof, cannot be disturbed by the
appellate court, even though there is oral evidence tending to prove
payment of the purchase money of the real estate, some months
before the deed was executed. (p. 602).

5. FRAUDULENT CONVEYANCES—*Personal Liability of Grantee Selling
to Bona Fide Purchaser.*

If a fraudulent purchaser has sold the property to a *bona fide*
purchaser, so that it cannot be reached by the creditor, a per-
sonal decree may be entered against him for the amount of the
debt, the proceeds of the sale being sufficient to pay it. (p. 607).

Appeal from Circuit Court, Tucker County.

Bill by John J. Root, administrator, etc., against William
D. Close and others. Decree for plaintiff, and defendants
appeal.                                                *Affirmed.*

*D. E. Cuppett* and *Chas. D. Smith,* for appellants.
*J. W. Harman,* for appellee.

POFFENBARGER, JUDGE:

The principal inquiries in this cause are:   (1), whether
the sum of $471.00 placed in the hands of William D. Close,
one of the defendants, by the intestate, Jonathan Root, was
a mere deposit or loan, on the one hand, or, on the other, a

payment to Close for the care, support and maintenance of said Root; and (2), if so, whether a deed to Mrs. Kate Close, his mother, was made with intent to hinder, delay and defraud the estate of the intestate, in the collection of that sum of money. Having decided both issues in favor of the plaintiff, the court entered a personal decree against Mrs. Close for part of the money, $290.00, she having disposed of the house and lot to Willis Evans, an innocent purchaser for value. She and William D. Close, the principal debtor, have appealed from the decree.

At the date of the inception of the transaction out of which this controversy arose, Jonathan Root, the decedent, was about seventy years old, unmarried, excentric and homeless, but neither destitute nor wholly unable to work. Until a comparatively short time before that date, he maintained a nominal residence with his brother at a place in Preston County, W. Va. and owned a small farm in that county but led a sort of wandering or migratory life. A great deal of his time was spent in the woods as an employee or in some other capacity, and, at one time, he seems to have held a position on the police force in the City of Baltimore. The brother says his home was Jonathan's domicil for a period of about forty-five years. Shortly before he gave it up, he conveyed his farm to T. B. Root, a son of his brother, for and in consideration of $1,-600.00, of which $600.00 was paid in cash and the residue made payable in ten equal annual installments represented by notes bearing interest. This nephew says the deed provided that such of the notes as should remain unpaid, at the date of the death of the grantor, were not to be paid. After having executed the deed, Jonathan Root resided with his nephew, the grantee, in the house on the farm, for about one week. Leaving that place, he stayed with his brother, the father of the grantee, about three weeks, and then left, saying he intended to go in search of a job. Whether he went immediately to Leadmine in Tucker County, the place of residence of William D. Close, does not appear.

· Close's location at Leadmine seems to have been substantially coincident with that of Root in point of time. In 1915, he either purchased or established a small general store at that

place, and, in some way not disclosed by the record, obtained title to the house and lot in question, and resided therein, Root came there as a woodsman and, shortly after his arrival, he became an inmate of Close's home. Before he was taken into it, he placed $380.00 in the hands of Close for safe keeping, saying he did not want to carry it with him while working in the woods. Later he put into Close's hands an additional sum of $91.00. He also left in Close's hands the ten $100.00 notes executed to him by T. B. Root, on account of purchase money of the farm. His other property consisted of a small amount of money due him from a relative residing in Thomas, West Virginia, and a horse which he kept at Close's. The period of his residence at Close's seems to have been something more than a year, during all of which, except the last few days, he rendered Close more or less service in and about his store business and his home, using his horse. As to the amount and value of his services, the evidence is some what uncertain and conflicting. Close gave him a comfortable room and bed and permitted him to take his meals with the family. He also furnished him suitable and sufficient clothing and provided stable room and feed for the horse. It is established by a very decided preponderance of the evidence, that he was treated kindly and well provided for. Though intelligent opinions might differ as to the value of his services and the use of his horse, the evidence as to it is not such as would justify this court in disturbing the finding of the trial court, to the effect that it constituted a substantial set-off against the value of the board, lodging, stable room and feed furnished. Near December 1, 1916, he became ill of pneumonia and died December 11, 1916. During the period of his illness, Close furnished him medical attention and all possible care, and, after his death, paid the expenses of his funeral.

Immediately after the death of Root, his relatives made a demand upon Close for the property left in his hands. He promptly delivered to them the notes, but declined to pay over the money or give up the horse, claiming the former as compensation for the care and maintenance of the intestate and the latter upon the theory of gift thereof to his wife by the intestate, within the period of his last illness. The

horse was afterwards recovered by the administrator in an action of detinue. There is a close relation in point of time between Root's death and Close's disposition of his property. By a deed dated, December 15, 1916, and acknowledged, December 30, 1916, he conveyed the house and lot to his mother. In January or February 1917, he made a bulk-sale of his groceries, some of the dry goods, the showcases, the stove and the scales, to J. G. Beringer, for something less than $300.00, and removed the balance of the goods to his mother's store at St. George, a place situated a few miles from Leadmine. With the money derived from the sale of the house and lot and his stock of goods, he seems to have settled up all of his indebtedness except what is involved in this suit.

As the bill aptly alleges the indebtedness claimed and fraud in the disposition of the property, conveyance of the real estate to the debtor's mother and mingling of his store goods with hers, it is hardly necessary to observe that the demurrer thereto, on the ground of adequacy of legal remedy, was properly overruled. It is fair to counsel for the appellants to say they do not here insist upon the efficacy of the demurrer. They do compalin, however, of the rejection of a portion of the answer, purporting to set up new matter constituting ground of affirmative relief. On an exception, the court partially eliminated seven paragraphs of the answer, upon the theory that the matter set up therein, as constituting ground for affirmative relief, was foreign to the purpose of the bill. The exception seems to have sought complete elimination thereof, but the court treated it as one seeking exclusion of such matters, only in so far as they constituted a claim for cross-relief and, only to that extent, sustained it. In so far as the averments of the answer were merely defensive, they were allowed to stand and the cause made by the bill and the answer so restricted was determined upon its merits. The prayer for affirmative relief in the answer was based upon averments of title in the defendant, William D. Close, to the entire estate of Jonathan Root, the amount of money left in his hands, the horse, the purchase money notes and right of rescission of the deed conveying the farm to T. B. Root, upon some theory

not specifically stated, perhaps fraud in the procurement thereof or non-performance of a condition subsequent. In as much as the relief sought by the cross-bill answer was entirely out side of and beyond the subject matter of the bill, the court properly excluded the matters upon which the prayer therefor was based. If there was right to retain the money held by the defendant and also right to recover the other property that had been taken from him, both grew out of and rested upon the contract averred in the cross-bill answer, it is true, but the subjects were entirely different. The bill sought recovery of the money deposited, loaned, or paid and nothing more, while the cross-bill answer sought recovery of the note, the horse, and all other personal property belonging to the intestate and cancellation of the deed by which he had conveyed his land. These subjects are clearly foreign to that of the bill and litigation respecting them, would require new parties and might raise many new issues. Manifestly, they do not constitute proper matter for a cross-bill or ground for affirmative relief in an answer. *W. Va. O. & O. L.* v. *Vinal,* 14 W. Va. 637; *Hansford* v. *Coal Co.,* 22 W. Va. 75; *Peters* v. *Case,* 62 W. Va. 33.

The evidence relied upon to prove a contract between Root and Close, by virtue of which the latter was to have all of the property of the former, in consideration of care, maintenance and support, lacks the definiteness and certainty that ought to characterize evidence relied upon for such purpose; and these qualities are not supplied by the situation and conduct of the parties and the surrounding facts and circumstances, relied upon for that purpose. The evidence consists largely of loose declarations of intention and purpose on the part of the intestate. Several of the witnesses say he had frequently declared himself to be well satisfied and highly pleased with the new home he had found, contrasting his treatment by Close and his wife with that which he had received at the hands of his relatives. These declarations were accompanied by others to the effect that, if Close continued to treat him well, he intended to always remain with him and to leave him what property he might have at the time of his death. Close himself testifies that the money first received, $380.00, was

placed in his hands for safe keeping, before Root became a member of his family, and he does not say what the understanding between them was when the residue, $91.00, was delivered to him.

Nowhere in his testimony does he say, in so many words, that Root ever told him he should have the entire $471.00 for the services rendered him, but he quotes language used by Root to a little child, importing intent to bestow something on it or upon its parents. In addition to that, he says he claimed the money as his own, when it was demanded of him by the administrator. A brother of his testifies that Root had told him he had let him have $471.00 and that he intended to see that Close got all he had, not that he had given that money for services rendered and to be rendered. Close's mother testifies to the same sort of a declaration. Witnesses for the plaintiff say Close did not claim the money, when it was demanded of him, but that he did claim right of compensation for the care, support and maintenance of Root, against his estate, sufficient in amount to cover the money in his hands. That the old man's physical condition and personal habits were such as to render him an undesirable guest anywhere, is very well established. There is evidence tending to prove that he was afflicted with a loathsome disease which rendered his person unsanitary, and, at times, disagreeably oderiferous. He had an aversion for the cleansing properties of water and what is popularly deemed to be the comfort of clean clothes, and he seldom, if ever, had his hair or beard trimmed. His slovenly habits made him unwelcome in the homes of his relatives, but his brother says he allowed him to make his home his domicil for a period of forty-five years, but made him keep himself clean. A short time before he gave up his brother's home, his niece had trouble with him, on account of his slovenliness. There is a bare suggestion in the record, by way of hearsay, that the nephew to whom he conveyed his farm caused his bed to be moved out into, or over, a hog-pen, in his absence, but this is flatly denied by the nephew. The unkindness of his relatives, if any, and his estrangement from them do not prove a contract between him and the defendant Close. He may have been, in a sense, an out-cast, but,

whether he gave the defendant the money in question, in consideration of support and maintenance, depends upon the understanding and agreement between them. Although perhaps an out-cast, he was not helpless. His affliction did not wholly incapacitate him for work. While he remained at the home of the defendant, he was industrious and enterprising. Many witnesses say he worked constantly and early and late, in all kinds of weather. The defendant himself says the old man insisted upon his purchasing an additional horse, so he could do his hauling; and that, on one or more occasions, he protested against his going out to work in bad weather. There is no suggestion of lack of capacity for work, until he was attacked by the disease that ended his life. Besides probable capacity to earn his living, he had some property and was able to take care of it and utilize it. The facts and circumstances proved are altogether different from those established in *Bryson* v. *McShane,* 48 W. Va. 126, and the evidence adduced to prove an agreement between the intestate and the defendant, William D. Close, lacks the definiteness and certainty found in the evidence in the case just referred to. In view of the looseness and conflict which characterize it, this court would not be justified in disturbing the finding of the trial court as to the agreement between the parties. *White* v. *White,* 64 W. Va. 30.

Nor is it possible to disturb the trial court's finding as to the amount due. The services of the old man and the use of his horse were probably nearly equal in value to the services rendered to him. The decree, however, allowed a credit of $225.00 for services rendered and burial expenses, the court being of the opinion that the services of the intestate partially discharged his obligation for lodging, board, stable room and feed.

The circumstances under which Close disposed of his property and the manner in which he did so preclude disturbance of the trial court's finding of fraud in the conveyance of the real estate. It was a transaction between mother and son and in plain view of a claim of indebtedness against the latter, depriving him of the means out of which compulsory satisfaction thereof could be obtained, in the event of its estab-

lishment. There is documentary evidence of payments or advancements from the mother to the son, dated, May 24, 1916, August 7, 1916, and October 14, 1916, but these papers, two checks and a receipt calling for $450.00, the amount of the consideration recited in the deed, do not say what the money was paid for. They antedated the deed and the oral evidence is that only the last one represented purchase money. The other two admittedly did not originally do so. Both parties to these transactions were parties to the removal of a portion of the goods and the sale of the balance. This circumstance constitutes a badge of fraud and casts doubt and suspicion upon their explanation of the unusual circumstances attending the conveyance. *Colston* v. *Miller,* 55 W. Va. 490. About two months elapsed between the date of the last alleged payment and the date of the deed, and the date of the acknowledgment approximates that of the removal of the store goods, and all these events except the alleged payments occurred after this controversy arose. In view of the subsequent conveyance of the real estate to an innocent purchaser for value, the personal decree against Mrs. Close was proper. *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Lockhart* v. *Beckley,* 10 W. Va. 87; *Heath* v. *Page,* 63 Pa. St. 108.

Upon these principles and conclusions, the decree will be affirmed.

*Affirmed.*